WILLIAM BELLER, Respondent, v. JAMES MURPHY et al., Appellants.

Springfield Court of Appeals, December 6, 1909.

1. PARTNERSHIPS: Created By Contract: Partnerships Arise Out of Contracts and Are Not Implied. In the absence of a specific contract of partnership between the parties, a court will look to the entire transaction and construe it in the light of surrounding circumstances and determine what was the intention of the parties and this intention will be the controlling factor in determining whether or not a partnership exists.

2. ————: ————: Terms of Contract. Where a mining lease was taken by several parties on a royalty, by the terms of which it was to continue for ten years, and bound the parties to mine the land continuously for that time and to pay the owner a royalty on the ore mined; *held*, a partnership was created by the execution of the lease and that the partnership contract was for the definite period of ten years.

3. ————: ————: Mere Lease of Land Not Sufficient. The mere leasing of land does not in itself make the lessees partners, but only tenants in common. The terms and conditions of the lease and the use to be made of the land may create a partnership.

4. ————: **Length of Term: When Coextensive With Purpose.**
Parties engaged as partners to do a certain piece of work,
as the erection of a building or digging a ditch, will be held to
have agreed that the partnership should continue a sufficient
length of time to enable them to complete the enterprise. So,
where partners under a mining lease agree to mine the land
and pay royalties for ten years, they must have intended that
the partnership should continue during that time.

5. ————: **Statute of Limitations.** After it had run four years,
the owners of mining land attempted to forfeit a ten-year
mining lease on said land, under which lease, they with others,
were partners; and subsequently, they re-leased the land to
third parties at a higher royalty. In a suit by the ousted
partners against the owners as co-partners, for a division of
the profits, after the expiration of the ten-year lease, it was
held that the Statute of Limitations did not begin to run
from the date of the attempted ouster, but only from the time
of the expiration of the partnership, to wit, the expiration of
the ten-year lease.

6. ————: ————: **Distinction Between Partnerships for an
Indefinite and Those for a Fixed Time.** In a partnership
where no limit of time for its duration is fixed, the partnership
may be terminated in the absence of fraud at the will of
either partner, in which event the Statute of Limitations would
begin to run upon notice of dissolution; but where a partner-
ship has a fixed time for its duration and prior to that time
one of the partners wrongfully dissolves or attempts to dis-
solve it, there may be equities existing between the partners
that would have to be adjusted before the statute would begin
to run.

7. ————: **Exclusion of One Partner not a Dissolution.** The
mere exclusion of one partner by the other partners from the
business of the firm does not *ipso facto* dissolve the partner-
ship, but only furnishes grounds for a dissolution by a court
of equity on the application of the excluded partner.

8. ————: ————: **Two Remedies Open to Excluded Partner.**
Where one partner is wrongfully excluded from the business
of the firm by the other partners, and the partnership agree-
ment is for a definite time, he has two remedies: He can sue
at once for an accounting or he can wait until the expiration
of the partnership term and then sue.

9. ————: **Death of Partner Dissolves Partnership.** As a gen-
eral proposition the death of one partner dissolves the partner-
ship, but even in that case, the dissolution caused by death
does not affect existing contracts; and where the contract is
continued and completed as an act of the partnership, after

the death of one of the partners and after his estate has been settled, and there is nothing to do but to divide the profits, it would not be equitable to apply the doctrine that the death of one partner dissolves the partnership.

10. ————: **Death of Partner Affecting Existing Contracts.** Where a partnership had contracted under a lease to mine land and pay royalties for ten years, and the contract was carried out by some of the partners to the wrongful exclusion of others, the death of one of the partners did not affect the partnership contract to carry out the lease so as to start the running of the Statute of Limitations before the expiration of the lease.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Sapp & Wilson* and *A. E. Spencer* for appellants.

(1) Actions of this character are barred unless commenced within five years after the cause of action accrued. R. S. 1899, sec. 4273; Thomas v. Hurst, 73 Fed. 372; Bonney v. Stoughton, 122 Ill. 536, 13 N. E. 833. This section is applicable to all civil actions, whether at law or in equity. Rogers v. Brown, 61 Mo. 187; Kelly v. Hurt, 74 Mo. 561; Washington Savings Bank v. Butchers and Drovers Bank, 107 Mo. 133; Kline v. Vogel, 90 Mo. 239; Hoester v. Sammelmann, 101 Mo. 619; Smith v. Settle, 128 Mo. App. 379; Hudson v. Cahoon, 193 Mo. 547; Loomis v. Railroad, 165 Mo. 469; Goodson, Admx., v. Goodson, 140 Mo. 206; 25 Cyc. 1060; 30 Cyc. 718. It runs against constructive and implied trusts. Reed v. Painter, 145 Mo. 342; Landis v. Saxton, 105 Mo. 486; Burdett v. May, 100 Mo. 13; 2 Bates on Partnership, p. 966, sec. 942. (2) In this case the statute commenced to run when the Murphy's gave the forfeiture notice, took possession adverse to plaintiff and denied plaintiff's rights. 2 Lindley on Partnership, star page 510, bottom page 844; 2 Bates on Partnership, secs. 942, 945, 950; Jenny v. Perkins, 17 Mich. 28; Bonney v. Stoughton, 122 Ill. 536, 13 N. E. 833; Currier v. Studley, 159 Mass. 17, 33 N. E. 709;

30 Cyc. 720; Bluntzer v. Hirsch, 32 Tex. App. 585, 75 S. W. 326; Allen v. Woonsocket Co., 11 R. I. 288; Murray v. Penny, 108 N. C. 324, 12 S. E. 957; Coudrey v. Gilliam, 60 Mo. 86. (3) A partner who ousts his fellows, and denies their rights, is at most a constructive or implied trustee. With the ouster the right of action against him accrues, and the statute commences to run. Smith v. Ricords, 52 Mo. 581; Ricords v. Watkins, 56 Mo. 553; Nougues v. Newlands, 118 Cal. 102, 50 Pac. 386; Pierson v. McCurdy, 100 N. Y. 608, 2 N. E. 615; Oaks v. West (Tex.), 64 S. W. 1033; Merrill v. Monticello, 66 Fed. 165, 72 Fed. 462.

*C. V. Buckley* and *R. M. Sheppard* for respondent.

(1) A partner, while the partnership exists, cannot neglect to perform a duty or obligation required to be done by the partnership and then take advantage thereof, and forfeit the rights of his copartners. 30 Cyc. 438; Mitchell v. Reed, 19 Amer. Rep. 252. (2) Notice that a partner's share has been forfeited does not dissolve the partnership. Hart v. Clarke, 6 De G. Mc. N. & G. 232; 2 Lindley on Partnership, 952. (3) While the partnership relation continues, each partner is bound to act with utmost good faith toward his copartners. And if he purchase property for his individual benefit, or take a lease on it when the firm is entitled to the advantages of such purchase or lease, or secures a valuable contract for himself, he will be treated as trustee for the firm. 30 Cyc., p. 458; Perry on Trusts, 427; Jones v. Dexter, 39 Amer. Rep. 459; Mitchell v. Reed, 19 Amer. Rep. 252; Freeman v. Moffett, 119 Mo. 280; Parsons on Partnership, sec. 152. (4) The Statute of Limitations does not begin to operate between copartners until dissolution, for prior to that time there is no right to demand an account, 2 Bates on Partnership, sec. 445; Lindley on Partnership, p. 510; Horne v. Ingram, 16 N. E. 877; 30 Cyc. 718.

STATEMENT.—This is an action for a partnership accounting. Trial was had, judgment for plaintiff, and defendants have appealed. The facts necessary to a determination of the questions involved in this appeal are as follows:

On June the 5th, 1895, Patrick Murphy, who was the owner of the land, leased to himself, this plaintiff, James Murphy, and others, a tract of land in Cherokee county, Kansas, for mining purposes for a period of ten years. The lease required mining operations to begin within thirty days and to be kept up continuously, unless prevented by unavoidable accident, for the term of the lease, and required the lessees to keep machinery on the land sufficient to operate the mines in a workmanlike manner. There were several other provisions, among which was one, providing that should the lessees fail to comply with any of the terms of the lease, that the lease should be forfeited. The parties began work on the land, expended considerable sums of money, did considerable drilling and some mining, but did not work continuously. They worked during the summer season, and, by mutual consent, suspended during the winter season. This continued until the spring of 1899. In the early spring of 1899 valuable ore was discovered on land adjoining and very near to this land with indications that the ore extended under the land covered by this lease. On May the 1st, 1899, James Murphy, having, in the meantime, acquired a one-half interest in the fee of the land with Patrick Murphy, who was his brother, the two Murphys, on that date, attempted to forfeit the lease by notifying this plaintiff, and the other parties, that their interest in the lease was forfeited; and the Murphys then refused to continue the mining operations with this plaintiff and other lessees, but soon thereafter leased the land to other parties and mining operations were conducted by them under which they paid to the Murphys a royalty of twenty per cent, and under this provision the Murphys received large sums

of money as such royalty. Under the lease by Murphy to the plaintiff and others, the royalty required to be paid was ten per cent. Plaintiff seeks by this action to recover his part of the extra ten per cent royalty received by the Murphys from May 1, 1899, to June 5, 1905, the date of the expiration of the original lease. Patrick Murphy died in the year 1900, testate. His estate was administered and finally closed in 1903, and, on distribution, his heirs and devisees received more than the amount of plaintiff's judgment. The defendants, who are heirs and devisees of Patrick Murphy, plead the five-year Statute of Limitations, and also the administration statute. Defendant, James Murphy, pleads the five-year statutes of both Missouri and Kansas, and also the three-year statute of Kansas.

COX, J.—The defense in this case is the statute of limitations, and unless that defense is available under the facts in this case, the plaintiff was entitled to recover and the judgment should be affirmed. In the investigation of this question, it becomes necessary in the outset to determine the nature and extent of the partnership existing between the grantees in the lease of June 5, 1895, and to determine whether it was a partnership for a fixed period of time or was merely a general partnership with no time fixed for its duration. It will be observed that there is no specific contract of partnership between the parties outside of the lease itself.

It is a well-settled rule of law that partnerships arise out of contract and are not implied, and whether or not a partnership exists depends upon the contract of the parties, and if there be no specific contract of partnership between the parties, a court will look to the entire transaction and from that, construed in the light of the surrounding circumstances determine what was the intention of the parties, and this intention will be the controlling factor in determining whether or not a partnership existed. [McDonald v. Matney, 82 Mo. 1.

c. 365; Torbert v. Jeffry, 161 Mo. 645; Hughes v. Ewing, 162 Mo. 261.]

Logically, then, the terms of the contract of partnership should be determined in the same way. In this case the partnership came about by the execution of the lease of June 5, 1895, which by its terms provided that it should continue for a period of ten years—with a provision for forfeiture—and bound the parties to mine the land continuously for that time; to keep sufficient machinery on the land to do the work and to work the mines in a workmanlike manner; to keep the shafts and drifts properly secured so as to prevent caving, and some other minor provisions, and to pay to Patrick Murphy a royalty of ten per cent of the value of the ore mined. The purpose of this partnership was to conduct a mining business upon the land leased, and the parties must have understood that the business was to continue during the life of the lease, and this made it a partnership contract for a definite period, to-wit: ten years. The mere fact that they had leased the land did not of itself make them partners. If that were all, they would be tenants in common, so that it was not the fact of the lease alone, but the terms and conditions of it and the uses to be made of the land that made them partners. This being true, the contract of partnership must be held to embrace the conditions of the lease, and to be co-extensive with it in all particulars, including the time it was to continue.

It is clear that parties engaging as partners to do a certain piece of work, as the erection of a building or digging a ditch, will be held to have agreed that the partnership should continue a sufficient length of time to enable them to complete the enterprise.

In this case they agreed, by the terms of the lease, to mine this land and pay royalties for ten years, and as they were partners in the enterprise, they must have intended that the partnership should continue during that time.

Having determined that this partnership was an agreed partnership for the term of ten years, we must next determine when the Statute of Limitations began to run against this plaintiff. It is conceded in this case that the attempted forfeiture by Murphys on May 1, 1899, was illegal, as they were themselves lessees as well as owners of the fee, and had, by their previous conduct, waived the right to declare a forfeiture. The contention of appellant is that while this attempted forfeiture, followed by the exclusion of plaintiff from a participation in the mining business on this land, did not *ipso facto* dissolve the partnership, it did start the Statute of Limitations to running from that date. In determining when the Statute of Limitations begins to run in cases of this character, a distinction should be drawn between the cases in which the partnership is a general one and no limit as to the time of its duration fixed, and those partnerships formed for a specific purpose or for a specified time. In the former, either partner may, in the absence of fraud, terminate it at will without incurring any liability and may do this by simply notifying the other partners of his intention. In the latter, some courts have held that a partner cannot terminate such a partnership at will, but the trend of the authorities now is that it may be done, but if it is done without legal cause it will subject the wrong doer to liability for resulting damages. In the former case, the statute would begin to run at once upon notice of the dissolution. In the latter case, where the partnership is to run for a specific time and is dissolved, or attempted to be dissolved, prior to that time by the wrongful act of one partner, there may be equities existing between the partners that would have to be adjusted before the statute would begin to run. It has been held, and, we think, properly so, that the mere exclusion of one partner by the other partners from the business of the firm does not *ipso facto* dissolve the partnership but only furnishes ground for dissolution by a court of

equity upon the application of the partner excluded. In the case of Hartman v. Woehr, 18 N. J. Eq. 383, it was said, "If part of the capital of an, agreed partner has been paid, accepted and used and the business has been commenced in the name of the firm, he is an actual partner until the partnership is, legally dissolved, and a mere exclusion of such person by the others from the business of the firm by illegal acts on their part is not a legal dissolution, but is a ground for an application to a court of equity for a dissolution upon his part, and until such dissolution is had, he is entitled on an accounting, to his share of the profits." This case was cited and approved in the case of Karrick v. Hannaman, 168 U. S. 328. The rule therein enunciated is a most salutary one, and this case presents a very striking example of its necessity. Prior to and at the time of the attempted forfeiture by the Murphys, the mining on this land had not been productive, and if the plaintiff had sued at once he could, in all probability, have only recovered nominal damages. The evidence discloses that just prior to the time notice of forfeiture was given by the Murphys, valuable ore had been discovered on adjoining land and very near to this land, thus indicating that the Murphys expected that it could also be found on this land, and that furnished the motive for the attempted forfeiture. Evidently, this attempted forfeiture was not made in good faith, but was for the purpose of seeking to secure to themselves an undue advantage over the plaintiff and the other partners. To require that plaintiff, under these circumstances, should sue at once, or suffer the Statute of Limitations to begin to run against him, when the Murphys had agreed that this partnership should continue for ten years, would be manifestly unjust; and, we therefore conclude that this plaintiff, upon receiving the notice of forfeiture from the Murphys, had two remedies. He could sue at once for an accounting or he could wait until the expiration of the ten years which the partner-

ship was to continue and then sue. Not having commenced his action until after the expiration of the ten years the lease was to run, he has elected to pursue the latter remedy, and hence the statute did not begin to run until the lease had expired, which was on June 5, 1905. This action, having been begun March 9, 1908, is within three years from the expiration of the lease, and hence is not barred by either the three or five year statute of Kansas or the five year statute of Missouri.

It has been suggested on the part of the heirs and devisees of Patrick Murphy that he, having died October 12, 1900, and his estate having been administered, that his death dissolved the partnership and required an immediate accounting, and that the Statute of Limitations would begin to run from the date of his death. As a general proposition the death of one partner does dissolve the partnership, but even in those cases, the dissolution caused by death does not affect existing contracts. [30 Cyc. page 620; Hughes v. Gross, 106 Mass. 61, 43 N. E. 1031.]

Since this partnership had contracted to mine this land and pay royalties for ten years, its contract must be fulfilled. The Murphys being lessees and members of the partnership, their act in leasing the land to other parties was the act of the partnership and entitled the members of the partnership to the benefits of that lease and as, through them, the business of mining on this land had been transferred and was conducted by what is in legal effect a sublessee, and there was nothing left for this partnership to do but to receive and divide the profits, it would be inequitable to say that the death of one partner before the expiration of the time the partnership was to run, should deprive his estate and the other partners of their share of the profits for the unexpired term, and as plaintiff had the right and did elect to let the business proceed to the end of the term before asking for an accounting, and as Murphy had died and his estate had been finally settled prior to that time,

the doctrine that the death of one partner dissolves the partnership would not apply to the facts of this case. Judgment affirmed. All concur