HOBART-LEE TIE COMPANY, Appellant, v. J. GRODSKY, O. A. PALMER, SAM E. GRODSKY and M. GRODSKY, as Last Board of Directors and Trustees of COMMERCE FINANCIAL CORPORATION; O. G. ROEDER, PAUL F. PLUMMER and EDWIN A. SCHMID, as Trustees and Last Board of Directors of BLACK RIVER TIE & TIMBER COMPANY, and E. F. CORDIA, J. GRODSKY and O. G. ROEDER, as Individuals.—46 S. W. (2d) 859.

Division One, February 11, 1932.

*Jourdan & English* and *Harry Clymer* for appellant.

*Jeffries, Simpson & Plummer* for respondents O. G. Roeder, Paul F. Plummer and Edwin A. Schmid, as Trustees of and the Last Board of Directors of Black River Tie & Timber Company.

*Leahy, Saunders & Walther* and *J. L. London* for respondent J. Grodsky, O. A. Palmer and Sam E. Grodsky, as the Last Board of Directors and Trustees of Commerce Financial Corporation.

GANTT, P. J.—Action to recover a balance due plaintiff for railroad ties. The sale and delivery of the ties and the amount due are not questioned.

Plaintiff alleged that the individual defendants and the defendants Commerce Financial Corporation and Black River Tie & Timber Company (Missouri corporations) were members of a joint enterprise and as partners did business under the trade name of E. F. Cordia Land & Lumber Company. It further alleged that defendants doing business as members of said enterprise purchased the ties from plaintiff.

The corporations were dissolved prior to the institution of this suit. In this situation, plaintiff sued certain defendant persons as constituting the last board of directors and trustees of said corporations. It did so thereby seeking to subject assets of the corporations in the custody of said directors and trustees to the payment of the balance due plaintiff. The petition was not challenged by demurrer or motion.

The answers denied the existence of a joint enterprise and partnership. Further answering, the defendants (last board of directors and trustees of said corporations) pleaded that said corporations could not legally engage in a joint enterprise and partnership or become liable as members of a joint enterprise and partnership. The replies were general denials, with pleas that said corporations and persons received the ties from plaintiff, sold and received payment for them and were thereby estopped, and consequently the defendants as trustees are estopped, to plead the defense of *ultra vires*.

It was admitted that O. G. Roeder, Paul F. Plummer and Edwin A. Schmid were the last board of directors of the Black River Tie & Timber Company and that J. and Sam E. Grodsky and O. A. Palmer were the last board of directors of the Commerce Financial Corporation.

The court directed a verdict for the individual defendants, M. and J. and Sam Grodsky and O. A. Palmer. Thereupon plaintiff dismissed as to O. G. Roeder, as an individual defendant. The jury returned a verdict for $9,292.42 in favor of plaintiff and against E. F. Cordia and the defendant directors and trustees of said corporations. The motion of defendant Cordia for a new trial was overruled, and the motions of the defendant directors and trustees were sustained. Plaintiff appealed from the order granting a new trial to defendant directors and trustees.

In granting the new trial the court ruled that there was no substantial evidence tending to show a partnership. The petition did

not allege a general partnership. It alleged that the persons and corporations "were engaged in business together in a joint enterprise and as partners." That is, they engaged in a joint enterprise and did so as if partners. A joint enterprise or joint adventure is in the nature of a partnership and is a "limited," "special," or "quasi-partnership." [4 Words & Phrases (3d) p. 587.] It follows that the question of partnership may be put aside.

Even so, defendant directors and trustees contend that there was no substantial evidence tending to show a joint adventure. There was no written contract of joint adventure, and plaintiff did not seek recovery on the theory of estoppel to deny a joint adventure. It charged the existence of a joint adventure and further charged that the defendant Cordia and the corporations were members of said adventure. Thus the principal questions are reduced to a consideration of the issue of joint adventure.

As stated in Denny v. Guyton, 327 Mo. 1030, 40 S. W. (2d) 562, l. c. 571, there is an abundance of case law on the subject of joint adventure. It is said to be analogous to, but not identical with, a partnership, and is defined as an association of two or more persons to carry out a single business enterprise for profit, and is usually but not necessarily limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years. [Elliott v. Murphy Timber Co., 244 Pac. 91, 93.] The relation may be established without a specific formal agreement; it may be implied or proven by facts and circumstances, and an agreement to share losses is not necessary; it also may be implied. In this contention it should be stated that while the rights as between the adventurers are governed by the same rules that govern partnerships, the decisions defining and describing partnerships are not controlling upon the question of whether the parties to the agreement were joint adventurers. [Denny v. Guyton, supra; Keiswetter v. Rugenstein, 48 A. L. R. 1049, l. c. 1059.]

We now consider the facts to determine if there was substantial evidence of a joint adventure. Defendants seek to have the question determined from a consideration of all the evidence. We are without authority to do so. The evidence must be viewed in the light most favorable to plaintiff. There was evidence tending to show the following:

E. F. Cordia was in the tie, timber and lumber business under the trade name of E. F. Cordia Land & Lumber Company. He owned timber land and controlled other such land from which ties and lumber were produced for the market. In financing the business he

borrowed money from the Commerce Financial Corporation on assigned invoices covering material sold by him. He continued to finance the business in this manner for quite a period of time and until he was indebted in a large sum to said corporation. At this time and on this account it was agreed between Cordia and J. Grodsky and O. A. Palmer, owners of the stock of said corporation and its controlling officers, that said corporation would advance to E. F. Cordia Land & Lumber Company a certain sum of money, take charge of its office and attend to the clerical side of the business in St. Louis, thereby permitting Cordia to devote all of his time to the business "in the field." It was furthur agreed that Cordia and the corporation would share equally the profits from the business. On said agreement, O. G. Roeder, an employee of said corporation, took charge of said office and the books, accounts and records of the E. F. Cordia Land & Lumber Company, and Cordia proceeded to and did attend to the timber, tie and lumber business of the company out in the State. Roeder continued in charge of the office of the Commerce Financial Corporation and was paid by said corporation for his services to the Cordia Land & Lumber Company. The business was conducted under this agreement and in the name of E. F. Cordia Land & Lumber Company until September, 1923. At that time the parties interested decided to form a corporation. They did so under the name of the Black River Tie & Timber Company. One-half of the stock was owned by E. F. Cordia; one-fourth of the stock was owned by J. Grodsky, and one-fourth of the stock was owned by O. A. Palmer. Thereafter the business was conducted under the name of the Black River Tie & Timber Company or the E. F. Cordia Land & Lumber Company. Contracts were outstanding under the name of the E. F. Cordia Land & Lumber Company and said trade name was considered of value on the market. Roeder, employee of the Commerce Financial Corporation, continued in charge of the office, kept the accounts under the names of the Black River Tie & Timber Company and the E. F. Cordia Land & Lumber Company, and kept separate bank accounts under those names. Cordia continued to attend to the business out in the State. At this time the contracts of the E. F. Cordia Land & Lumber Company included a contract for one hundred thousand ties sold by E. F. Cordia Land & Lumber Company to one Jacobs, who was under contract with the Terminal Railroad Association of St. Louis for said number of ties.

For some time the Black River Tie & Timber Company continued under this contract the delivery of ties from its timber lands. On inspection many of them were rejected and Jacobs was complaining of slow delivery. This condition caused a meeting of E. F. Cordia, J. Grodsky and O. A. Palmer to consider the matter. At this meeting Cordia announced that he could buy ties on the market to com-

plete the delivery under the contract. It was agreed that he should do so, and that Grodsky and Palmer would share equally with him the profits. Of this Cordia informed Jacobs. He agreed that Cordia might undertake delivery from the market upon the guaranty of the Black River Tie & Timber Company that the ties would be delivered. He also agreed to discount invoices on ties billed direct to the Terminal. Thereafter the E. F. Cordia Land & Lumber Company purchased from plaintiff the ties in question. The ties rejected by the Terminal were taken to the yards of the Black River Tie & Timber Company in Madison, Illinois. Thereupon Roeder credited to the E. F. Cordia Land & Lumber Company said rejected ties. In paying for accepted ties, Jacobs made the checks payable to either the Black River Tie & Timber Company or the E. F. Cordia Land & Lumber Company. If payable to the Black River Company, Roeder indorsed the check to the E. F. Cordia Land & Lumber Company. During all this time, Roeder had charge of the office of these persons, corporations and company. He signed the checks, attended to most of the correspondence, had charge of the books, kept the records of the business, and his salary was paid by the Commerce Financial Corporation.

From this evidence it may be inferred that E. F. Cordia and the Commerce Financial Corporation intended to and did enter upon a joint adventure. It may also be inferred that said relation continued under the names of the Black River Tie & Timber Company and the E. F. Cordia Land & Lumber Company and existed at the time plaintiff sold the ties and during the time it delivered the ties. Other facts and circumstances in evidence tended to show no joint adventure. In this situation the question was for the jury.

In this connection defendants contend that said corporations were without authority to engage in a joint adventure. A corporation may do so if the purpose of the adventure is within its corporate powers. [Denny v. Guyton, supra, l. c. 572.] The Black River Tie & Timber Company was authorized by its charter to engage in the timber, lumber and tie business. The Commerce Financial Corporation was not so authorized, but the contract for the ties was fully executed by plaintiff, and for that reason the defense of *ultra vires* was not open to said corporation. [Schlitz Brewing Co. v. Poultry & Game Co., 287 Mo. 400, l. c. 407, 229 S. W. 813.]

Defendants next contend that it was prejudicial error to submit the issue of joint adventure without defining it or hypothesizing the facts to the jury upon which a finding of joint adventure could be based.

In a brief of defendants certain facts are set forth as "proven beyond dispute." These facts include all the facts above set forth as substantial evidence tending to show a joint adventure, except the evidence tending to show that Grodsky and Palmer would share

equally with Cordia the profits from the purchase of ties on the market to complete the Jacobs contract. On this record the failure of the court to require the jury to find these facts "proven beyond dispute" could not have been prejudicial. The instruction required a finding that if plaintiff sold the ties to one or more of certain persons and corporations and that said person or persons and corporations were doing business jointly in a joint enterprise under the name of E. F. Cordia Land & Lumber Company, and that whoever was doing business under said name authorized the agent of the joint enterprise to order the ties from plaintiff for those engaged in the joint enterprise, and that said ties were delivered, then those found to have been engaged in said joint enterprise were liable to plaintiff for the balance due on said ties.

We think the facts found by the jury under this instruction with the facts "proven beyond dispute" were sufficient basis for a finding of joint adventure. If defendants did not think so, they should have tendered a more definite and specific instruction.

Defendants next contend that instruction numbers one and two are inconsistent. Instruction number one was given at the instance of plaintiff, and instruction number two was given at the instance of defendant Cordia. They contend that instruction number two proceeds upon the theory of an undisclosed principal. They direct attention to no word or words in the instruction submitting the theory of an undisclosed principal, and an examination of the instruction discloses no such theory.

The judgment should be reversed and the cause remanded, with directions to set aside the order granting a new trial, reinstate the verdict and enter judgment thereon for the plaintiff. It is so ordered. All concur.