## SAM P. McCULLOUGH, Inc., v. DOGGETT.

No. 25609.    Feb. 4, 1936.

Lloyd C. O'Dell and Stephen A. George, for plaintiff in error.

Sigler & Jackson, for defendant in error.

PER CURIAM. This was an action originally brought in the justice court of Ardmore township, Carter county, by a bill of particulars filed therein on November 13, 1933. The defendant in error was plaintiff there, and the plaintiff in error was defendant there, and the parties will be referred to here as they were in the trial court. Judgment was rendered for the plaintiff in the justice court for the sum of $137.50 and costs of action. The cause was thereafter appealed by the defendant to the district court of Carter county, Okla., and upon the 3rd day of February, 1934, the trial was had in the district court of Carter county, resulting in a judgment being rendered for the plaintiff in the sum of $162.50.

In behalf of the plaintiff the cause was tried upon the bill of particulars filed in the justice court, supplemented by an oral statement of counsel for the plaintiff. In said bill of particulars it was alleged, in substance, that on the 1st day of August, 1933, plaintiff purchased from defendant a new Dodge automobile, and the said automobile was guaranteed by the said defendant in the usual manner against defection, workmanship, and material; that after the car had been driven about 1,000 miles it began to leak oil and became defective, and that plaintiff took the car to defendant for adjustment: that the defendant refused to adjust the car, and that the plaintiff then asked the defendant to permit plaintiff to return the car to defendant, and defendant to pay to plaintiff what plaintiff had theretofore paid defendant upon said car; that the defendant at the time represented to the plaintiff that he would have to sell the car if he took it back as a second-hand car; that the plaintiff had paid the defendant a cash payment of $390 on the car; that believing that the defendant would be forced to sell said car as a second-hand car and would sustain a loss thereon, the plaintiff delivered said car to the defendant and received back only the sum of $227.50; that the defendant in fact later sold said car as a new car and for the price of a new car, and that therefore plaintiff was entitled to recover $184.55. The oral statement of counsel for plaintiff supplemented said bill of particulars in respect to the transaction between the parties as follows:

"And then Mr. McCullough told him he would have to sell the car as a second-hand car if he should take it back, and said, 'If I could sell it as a new car I would gladly give you back all of your money.' and said, 'Inasmuch as I would have to take a loss on it, you should take half of the loss,' and then they got together; Doggett believing McCullough's statement that he would have to take a loss on it took his part of the loss and made the settlement, and his part of the loss was $184, and McCullough paid him back the money except $184. A short time after that McCullough sold the car as a new car, and we think he should pay us this $184 upon his statement that he would have to sell it as a used car, and believing that he would have to take a loss on it. In other words, this is based upon fraud that he had to take a loss on the car and he knew at the time when he took it in he was going to sell it for a new car. We will show afterwards he sold it as a new car, and that he took it in and made this trade for the purpose of inducing these people to knock off the $184 knowing he was going to sell it as a new car, and since he did sell it as a new car we don't think we should stand any loss at all."

The pleading for defendant was by oral statement, and the defendant pleaded in substance that he sold the new Dodge sedan to the plaintiff's husband and took the old car of plaintiff for a consideration of $265 and $100 in cash as part payment on the new Dodge car; that sometime afterward the plaintiff's husband brought the new Dodge car back and complained of it using too much oil, and that plaintiff's husband wanted to rescind the trade, and that after negotiations the defendant and plaintiff's husband agreed that the defendant would take the new Dodge car back and would pay to the plaintiff's husband $227.50, and that defendant would pay said amount to plaintiff's husband in full settlement of the matter; that after the defendant had taken back the Dodge car it was sold to a lady near Madill, Okla. as a new car; that defendant had two other cars just like this one upon his floor, and that a salesman made a mistake in selling this car as a new car; that soon after the car had been sold to the lady at Madill, it was discovered that it had been sold as a new car, and that the defendant took this car back from the lady at Madill, and gave her a new car in its place, and after taking the car back from the lady at Madill that the defendant sold the car involved in this action at a loss. Defendant's counsel at the close of both statements objected to the introduction of evidence upon the part of plaintiff because no sufficient cause of action was pleaded in behalf of the plaintiff. This motion was by the court overruled, and the defendant excepted.

Upon trial, Ben Doggett, husband of plaintiff, testified he purchased this new Dodge sedan from the defendant for his wife; that he paid $100 in cash and his old car was

taken in at the value of $290; that the remainder of the purchase price was represented by notes executed by him; that he had driven this car for some distance when he found it was leaking oil badly; that he had this car examined at various places while he was driving it and found that it was defective in that it continually leaked oil and therefore used too much oil; that after he had driven the car in excess of 3,000 miles he took it back to the defendant and asked for an adjustment; that the defendant told him that the car had been driven more than 3,000 miles, and that if the defendant took it back the defendant would incur a loss on the car; that finally the plaintiff, her husband, and the defendant agreed at the plaintiff's home that the defendant would take the car back, and that the plaintiff would stand half the loss and the defendant would stand half of the loss; that the defendant at that time said that if he could get full price for the car he would repay plaintiff all of her money instead of half of it. However, at that time settlement was made by plaintiff receiving half of the money that she had paid defendant for the car, and by the defendant taking the car back. The only testimony from the husband of plaintiff as to what was said with reference to the action of defendant if he could sell the car for a new car, was as follows:

"Q. He say anything about paying you in full if he could sell it as a new car? A. Yes, if he could get full price for it he would."

The plaintiff herself testified upon this subject in the following language:

"Q. You ever hear of any other conversation after he brought it back? A. Only he would give us our money back if he could. Q. You have taken a loss on the car? A. If we could have sold it for a new car, we would have sold it. Q. What induced you to take the $184 loss? A. We had to do something, and he said he would have to take a loss of about $325, and we had to make a living and had to have a car. Q. Would you have done what you did if he had told you—By Mr. George (of counsel for defendant): We object to his leading his witness. By Mr. Sigler (of counsel for plaintiff): Q. If he had told you he was not going to take a loss on the car, would you have traded back as you did? A. Not if I did not think he would. From his statement to you that he would have to take a loss on the car induced you to trade with him as you did? A. Yes, sir; he said he would stand half of it if we would."

C. A. Doggett, son of plaintiff, testified as follows:

"Q. State whether or not you were present and overheard a conversation between Mr. McCullough and Mr. Doggett about this car? A. Yes, sir. Q. Where was that? A. Out in front of his place, and over in front of Shipman's place, his cafe. Q. What did he tell your father? A. He did not want to take it, said it would be all right if he could sell it for a new one, said father would have to stand some loss with him. Q. It would be all right if he could sell it for a new car? A. Yes, sir. Q. You hear any other conversation about it? A. Heard them talking there."

Mrs. R. Rice testified in behalf of the plaintiff that she lived at Madill; that she bought the car in question from the defendant about the middle of September; that a salesman brought the car to Madill and showed it to her first; that later Mr. McCullough brought this car and told her it was a new car, and that she bought it and paid full price for it; that shortly after she bought the car she learned that it was a second-hand car; that she then took it back to Mr. McCullough, and he said that it had been sold to her through a mistake as a new car; that he took it back and gave her a new car in its place.

This witness further testified that shortly after she bought this car from McCullough as a new car, Doggett, husband of the plaintiff, told her that it was a second-hand car; that on the same day Doggett told her this fact a salesman came from the defendant, and also told her it was a second-hand car and asked her to come and talk to Mr. McCullough about it.

At the conclusion of the plaintiff's evidence, defendant demurred to the evidence, which demurrer was overruled. The defendant himself testified that when he sold this Dodge car to Doggett he allowed Doggett $265 for his old car and collected from Doggett $100 in cash; that after the car began to give trouble, he and Doggett and Mrs. Doggett agreed that defendant was to take the car back and repay the Doggetts $227.50, and that he paid said amount to the plaintiff and her husband, and they accepted same; that he made no representation to the plaintiff or her husband as to what he would be able to do with this car in reference to selling it as an old car or as a new car; that afterwards this car was sold to Mrs. Rice at Madill by a mistake for a new car, and as soon as he learned of the mistake he took this car back from Mrs. Rice and gave her a new car in its place; that he then sold this Doggett car as a second-hand car and sustained a loss by virtue of his transaction with Doggett.

The court submitted to the jury the issue of whether or not the defendant fraudulently represented to the plaintiff that he would have to sell the car as an old car and take a loss, and also instructed the jury that if he made an honest mistake in selling the car as a new car to Mrs. Rice, and that thereafter he had to take the car back and sold it at a loss, then they should find for the defendant, but that, on the other hand, if defendant were not honest in selling the car to Mrs. Rice as a new car, he would be liable. There was no dispute in the evidence but that the defendant took the car back from Mrs. Rice and gave her instead thereof a new car and sold this Doggett car at a loss. That is, that he sustained a loss between the price he sold it for and the price he paid the Doggetts when he took it back.

It is difficult to understand whether this case is tried upon the theory that the defendant fraudulently induced the Doggetts to accept a smaller sum for this car than they would have by representing that he would have to sell it as a second-hand car and sustain a loss, or whether it is an action for a breach of said statement, as an alleged oral contract. In order to clarify the matter, the case must be decided upon both issues.

It is extremely doubtful whether the language testified to by the Doggetts as having been used by the defendant at the time of the return of the Dodge car can be said to be a representation of any character. All that they testified that he said was that if he could get full price for the car as a new car, he would repay them the other half of their money, and that he would have to sell this car as a second-hand car at a loss. If it can be said that these statements are representations, then no action for fraud may be founded upon such statements, because at the most such statements amount to nothing but a speculative opinion upon a subject about which the parties possessed substantially equal information.

The Doggetts had driven this car over 3,000 miles. It was unsatisfactory. It leaked oil continually. It was so unsatisfactory that they refused to keep it. They certainly knew that this was not then a new car. Assuredly they knew it was a second-hand car and a defective second-hand car. The statement that the defendant would have to take a loss on this car because he would have to sell it as a second-hand car, is at the most a speculative opinion. The statement that if he did sell it as a new car, he would repay them the other

half of their money, was a promise based upon a contingency. The rule is well established in this state and elsewhere that an action for fraud may not be sustained because of a mere speculative opinion based on the happening of a future contingency, and especially is this true when the party who claims to have been defrauded is in possession of substantially the same information as the party claimed to have made the representation. To this effect the following authorities are conclusive: Meyers v. Chamness, 114 Okla. 220, 245 P. 879, paragraph 3 of the syllabus:

"Whenever property of any kind depends for its value upon contingencies which may never occur, or developments which may never be made, opinion as to its value must, necessarily, be more or less of a speculative character; and no action will lie for its expression, however fallacious it may prove, or whatever the injury a reliance upon it may produce." Limerick v. Jefferson Life Insurance Co., 67 Okla. 178, 169 P. 1080; Derdyn et ux. v. Low et al., 94 Okla. 41, 220 P. 945.

Haslett et al. v. Wilkin, 42 Okla. 20, 140 P. 410, paragraph 3 of the syllabus:

"A purchaser of land cannot predicate fraud upon statements made by the vendor which, either by reason of their form or subject-matter, show to be mere expressions of opinion. A purchaser is not justified in relying upon the accuracy of such statements, and if he does, and the opinion turns out wrong, the purchaser has no action because thereof."

It must therefore be held that the statement attributed to the defendant to the effect that he would have to sell this car as a second-hand car and sustain a loss thereon, under the facts in this case, is nothing more than the expression of a speculative opinion about a matter concerning which the plaintiff and her husband were in possession of equal knowledge with the defendant. This being true it cannot be made the basis of actionable fraud.

If this be considered as an action for fraud, there would seem to be another unanswerable reason for denying any recovery to plaintiff. This car was not sold finally as a new car. Under the undisputed proof, the defendant accepted the car back from Mrs. Rice, to whom he had sold it, and gave her a new car in its place, at the cost of a new car to himself. The defendant thereafter sold the car in question as a second-hand car at a sum which represented a loss to him between the price he sold it for and the amount he paid the Doggetts. Certainly the sale to Mrs. Rice was not a

completed sale of this car as a new car, and how it would be considered so we are at a loss to understand. The sale of this car to Mrs. Rice as a new car was rescinded, and the car was sold as a second-hand car at a loss to the defendant. These facts being true the statement of the defendant, as testified to by the Doggetts, to the effect that he would have to sell the car as an old car and take a loss, was proven to be a true statement rather than a false statement.

It is an elementary rule that no representation is actionable unless it is false; no action for fraud can be based upon a representation when transpiring evidence demonstrates such representation to have been a true representation. 26 Corpus Juris 29, pp. 1088, 89, and authorities there cited. Sedgwick v. National Bank of Webb City, 295 Mo. 230, 243 S. W. 893; Kuhn et al. v. Dickey, 66 Cal. App. 227, 225 P. 867; Orr City Co. v. Rogers (Tex. Civ. App.) 190 S. W. 226.

Recovery should have been denied by the trial court in this case in so far as fraud was concerned, because the statement attributed to the defendant by the plaintiff to the effect that he would have to sell this car as a second-hand car at a loss proved to be a true statement and not a false representation.

Since this was an action originating in justice court and the pleading is largely oral, and since the testimony on behalf of the plaintiff is not only to the effect that the defendant stated that he would have to sell the car as a used car and take a loss, but is also to the effect that he stated if he could sell the car as a new car he would pay all her money to plaintiff, it might be considered that this action involves the claim of a breach of oral contract by the defendant. Considering the action from this standpoint the plaintiff must fail upon this theory. The plaintiff knew equally as well as the defendant that this car had been driven 3,000 miles or more, that it leaked oil, that it was defective, and that in fact it was at the time of the trade between plaintiff and the defendant, a second-hand car. This car could not be sold to some unsuspecting third person as a new car without the prepetration of a fraud upon such third person. Therefore, any oral contract between the plaintiff and the defendant, having for its object the sale of this car to some other person as a new car, necessarily had for its object the perpetration of a fraud upon such third person. The rule is established that neither party to a contract may recover upon such contract when it

has for its object the commission of a fraud upon the public or upon some third person.

A few of the many authorities that might be cited sustaining this proposition are as follows: Thompson Optical Institute v. Thompson (Ore.) 237 P. 965, paragraph 7 of the syllabus:

"Contract having for its object the commission of a fraud on the public is illegal." Sayres v. Decker Automobile Co. (C.C.A. N. Y.) 145 N. E. 744.

Horbach v Coyle et al. (C. C. A. 8th) 2 F. (2d) 702. Syllabus, paragraph 4:

"Contract having for its object the perpetration of a fraud on a third person is illegal and void." Armstrong v. Gresham (Colo.) 213 P. 114; Hancock v. Roitz, 129 Kan. 111, 281 P. 891.

It would seem certain that under this record both the defendant and the plaintiff knew that a contract, calling for the sale of this car as a new car to a third person in ignorance of the condition of the car, was a contract calling for the perpetration of a fraud upon such third person. This being true the courts of this state should not and will not afford any relief to one of the parties to the contract because of the breach of such contract by the other party.

If this should be considered as an action by the plaintiff for the breach of an oral contract by the defendant, then it must also fail because the promise to repay the plaintiff the balance of her purchase price was based upon the contingency that said car be sold by the defendant as a new car, which contingency never occurred.

The record reveals undisputedly that the car was not sold as a new car, but was finally sold as a second-hand car at a loss to the defendant. The law is that where a promise is conditioned upon the happening of a future event, the occurrence of such event is essential to the duty to perform. In this case the promise to pay the plaintiff the remainder of her purchase price was conditioned upon the defendant being able to sell the car as a new car. This contingency did not occur, and therefore the defendant could not be liable upon such conditional promise.

Authorities establishing this rule are as follows: Coran v. Davis, 216 Mass, 448, 103 N. E. 1027; Root v. Childs, 68 Minn. 142, 70 N. W. 1087; Husenetter v. Gullikson, 55 Neb. 32, 75 N. W. 41; McClintic-Marshall Const. Co v. Bd. of Chosen Freeholders of Hudson County, 83 N. J. Eq. 539, 91 Atl. 881.

Therefore, for the reasons assigned, this

cause is reversed, with instructions to the trial court to dismiss same.

The Supreme Court acknowledges the aid of Attorneys H. R. Young, S. J. Montgomery, and Eugene Monnet in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Young, and approved by Mr. Montgomery and Mr. Monnet, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.