**WHITE v. A. C. HOUSTON LBR. CO. et al.**

No. 25666.    Jan. 26, 1937.

Everest & Halley, for plaintiff in error.

Perry J. Morris and C. B. Leedy, for defendants in error.

PER CURIAM. This appeal arises from a judgment of the district court of Ellis county, Okla., in favor of laborers and materialmen claiming liens as a result of an unsuccessful attempt to drill an oil well. During the year 1931, W. D. Gladwell gathered leases upon about 16,000 acres of land in Ellis county and made a deal with one L. C. Hivick to get a test well drilled somewhere on the block to 6,500 feet. The leases were then placed in escrow with the Shattuck National Bank at Shattuck, Okla., together with an incomplete drilling contract signed by Hivick, and an escrow agreement directing that Hivick's name should be inserted as lessee in all of the leases when the provisions of the drilling contract were fulfilled.

Hivick and certain associates then entered into a contract with Charles Davidson, who did business under the fictitious name of the Charles Davidson Petroleum Company, whereby in consideration of 7,000 acres of leases out of the block, Davidson agreed to drill the test well and pay Hivick $2,000 in addition before the well reached a depth of 4,000 feet.

Four days thereafter, on June 25, 1932, Charles Davidson entered into a contract with W. R. White, plaintiff in error, whereby White leased to Davidson a complete rotary rig belonging to him for the purpose of drilling the test well. The term of the lease was not to exceed 100 days, and as consideration White was to receive $1,500 in cash, payable $500 on the date of spudding, $500 when the well reached 500 feet, and $500 when the well should reach 1,000 feet, with the further agreement that Davidson should assign to White, within a reasonable time, certain leases out of Davidson's 7,000-acre tract, described in the contract and covering 290 acres. It was also agreed as further consideration that Davidson would employ White as superintendent for the drilling of the well and pay him a monthly salary of $300 in addition, for this service.

The plaintiff below and various interveners and defendants were employed by Hivick and Davidson to perform labor and furnish materials in an attempt to drill this well, but all operations ceased about September 1, 1932, and suit was brought to establish their liens against certain leases, and also against the rotary rig owned by White which was used upon the well. When the case first came to trial on September 27, 1933, it appeared that three of the lien claimants sought not only liens, but also personal judgment against White. However, as no order had been made permitting the filing of their petition in intervention, and no notice of the filing of summons served upon White, the case was continued for service as to these three claimants. The parties having waived a jury, the court proceeded to hear the testimony regarding the liens of the others and took under advisement its judgment until November 22, 1933. At that time, service having been obtained upon White, the court called up the petition in intervention seeking personal judgment and White's attorney asked for trial by jury as to the issues concerning the personal judgment. The court refused to grant a jury trial on the ground that White had waived a jury at the hearing on September 27th. Exception was saved to this order, and the court proceeded without a jury and then rendered judgment concerning both hearings at the same time. The decree granted liens in favor of all claimants to attach to the rotary rig owned by White and rendered personal judgment against White in favor of Homer Doup, Troy Deering, and Foss Deering as a result of the hearing on November 22, 1933. This appeal is taken only by White seeking to be relieved of this personal liability and to free his rotary rig from the liens of all the claimants.

The contention of defendants in error is

that Gladwell, Hivick, and his associates, Davidson and plaintiff in error, White, co-operated together in the development of the lease upon which the work was done and liens sought to be established so as to constitute them mining partners or joint adventurers. The first objection of plaintiff in error is that this issue was raised only by reply of claimant Mahlandt, and therefore constitutes a departure. However, considering the allegations of the petition, answers and cross-petitions, the evidence in support of the theory of mining partnership or joint adventure in no way contradicts the facts originally alleged by any of the parties, and consequently the court did not err in allowing such testimony. But our examination of the record discloses that the facts herein do not constitute a mining partnership or joint adventure between the parties named, and the judgment of the trial court based upon this theory is clearly against the weight of the evidence.

Each case of mining partnership or joint adventure must necessarily be determined by its own facts. However, by examination of cases heretofore decided by this court, we can devise a test consisting of three requirements which must always be present in order to form the relationship: (1) There must be joint interest in the property by the parties sought to be held as partners; (2) there must be agreements, express or implied, to share in the profits and losses of the venture; and (3) there must be actions and conduct showing co-operation in the project. None of these elements alone is sufficient. Gillespie v. Shufflin, 91 Okla. 72, 216 P. 132; Anderson v. Keystone Supply Co., 93 Okla. 224, 220 P. 605; Wammack v. Jones, 103 Okla. 1, 229 P. 159; Robinson Pet. Co. v. Black, Sivalls & Bryson, 138 Okla. 128, 280 P. 593; Brown v. Wasoff, 126 Okla. 164, 259 P. 246; Carson v. Waller, 127 Okla. 186, 260 P. 72; Prince & Prince v. Sullivan, 124 Okla. 298, 256 P. 23; Jones v. Sinclair Crude Oil Purchasing Co., 130 Okla. 182, 266 P. 439; Ash v. Mickleson, 118 Okla. 163, 247 P. 680; Irelan v. Smoot, 132 Okla. 270, 270 P. 29; Tidal Oil Co. v. Fullerton-Stuart Lumber Co., 137 Okla. 58, 278 P. 330; Garber & Pulse v. Gloyd, 168 Okla. 88, 31 P. (2d) 947; McAnally v. Cochran (February 12, 1935) 170 Okla. 368, 46 P. (2d) 955.

In the case at bar there is no joint interest in the lease upon which the well is being drilled. The contract with White calls for the conveyance of adjoining leases, and not for a share in the profit or losses of the venture. White was to receive a certain sum for drilling the well whether it was a producer or not, and was to receive a specified amount for acting as superintendent under direction of Davidson. Thus is this case distinguished from Schraeder v. Gormley, 127 Okla. 66, 256 P. 869, and others cited by defendants in error. Whatever may be the interests of Gladwell, Hivick, and Davidson, we do not find the necessary joint interest and agreement to share in profits and losses as to plaintiff in error, White.

This court in holding a mining partnership to exist in the case of National Union Oil & Gas Co. v. Richard, 164 Okla. 13, 22 P. (2d) 88, stated the rule in keeping with the test above deduced. After stating the syllabus in Jones v. Sinclair Crude Oil Purchasing Co., supra, to the effect that the employment of a person to drill a well for an interest will not alone create a mining partnership, it said (p. 18, 164 Okla., 93, 22 P. (2d):

"Which is clearly not in conflict with the holding at this time in this case, and all the cases cited by all of the parties here indicate and show that the true rule is that mere joint ownership in the leasehold, or joint interest in the success of the well. does not constitute the parties a mining partnership, and that a person may be employed by contract to drill a well, and that persons may purchase an interest in a leasehold, or in a well being drilled, or to be drilled, without creating a mining partnership, but that when persons jointly interested in a leasehold, or in the success of the drilling of a well, co-operate and work together in the drilling of the well and in the development of the leasehold, such conduct may constitute them mining partners and create a mining partnership, which, under the law, is created, not by agreement alone or joint interest alone, but by their joint interest and their agreements, and their actions and conduct in co-operating together in the project, and that each case must be determined from the express or implied agreements and the facts and circumstances shown to exist therein."

That co-operation in the development is a necessary requirement is further announced in the syllabus of the recent case of McAnally v. Cochran, supra, as follows:

"A mining partnership or joint adventure cannot exist unless there is a co-operation among the parties in the development of a lease for oil and gas, each agreeing to pay his part of the expenses, and to share in the profits and losses."

There is considerable testimony to the

effect that White was present during the operations along with Hivick and others, and participated in bossing the work and directing the construction of the pipe line and other jobs, but excluding certain testimony in regard to promises made during various attempts to compromise, which we deem immaterial, the conduct was in keeping with the employment as superintendent.

As we find no mining partnership or joint adventure to exist, the liens of the various claimants, granted at the hearing on September 27th, cannot attach to the rotary rig of White. With the exception of the three laborers who obtained personal judgment at the November hearing, only H. C. Schoolfield had any direct dealing with White, and these were as agent for Davidson in keeping with the employment and known to the parties. White made no personal contract or promises to pay. All other parties contracted directly with either Davidson or Hivick, and they had first sold material or started to work before White's rig was actually moved onto the premises on August 4, 1932. Under the contract executed by White, Davidson did not own any interest in the rig at the time it was moved onto the property, and it was not provided that he ever should own any interest in it. The rig was at all times to remain the property of White. We deem the language of the court in the case of Garber & Pulse, Inc., v. Gloyd (1934) 168 Okla. 88, 31 P. (2d) 947, as being applicable to the situation presented in this case:

"There is no contention that Gloyd owned any interest in this particular property at the time it was taken upon the lease, or that anything transpired while it was being used upon the lease that would give him any claim to title thereto. We are of the opinion that a person who takes his drilling equipment or borrowed equipment upon the lease of another for the purpose only of drilling a well thereon, and the owner of the lease does not acquire any interest in the title thereto, does not thereby subject his property to the lien claims of third person creditors of the lease owner. It is the intention of the law to create a lien upon the property of the contracting lease owner, in favor of those having claims against the contracting lease owner. As well might it be said that a carpenter who takes his tools and equipment upon the land of another and uses them in performing services in the erection of a house thereon for a specified interest in the title to the land, thereby subjects his tools and equipment to the lien claims of those furnishing materials for the building of the house. Therefore, the judgment of the trial court is erroneous in so far as it attempts to subject the drilling equipment, tools, etc., taken upon this lease by Garber & Pulse, belonging to itself or to Champlin Refining Company, to the lien claims of Gloyd's creditors."

In view of our holding as stated above, we do not deem it necessary to pass on the question of whether the claimants were subcontractors or not and whether their liens were filed according to statutory provisions. However, we think the court erred in refusing White a trial by jury, as to the issues raised by the petition in intervention of Homer Doup, Foss Deering, and Troy Deering. At the time of the first hearing when White waived a jury trial, he had not been served with summons or notice of the petition in intervention of these parties. Although the petitions had been filed some days before the trial, they had been filed without leave of the court, no summons had been issued thereon, and White had no knowledge of their nature. The waiver, therefore, did not apply to the second hearing when White demanded a jury trial as he was entitled under 1931 O. S., section 350.

The record shows that answers for White as to the petition of intervention of Homer Doup, Foss Deering, and Troy Deering were filed on the 22nd day of November, being the date that the court decided matters he had tried on September 27, 1933, and without any notice to the defendant White or his attorneys at Oklahoma City, called up for trial the claims or petitions of intervention of Doup and the Deerings. Mr. Burrows asked for a continuance of the case until the next day and for a jury trial so that he could get in touch with defendant White and the attorneys at Oklahoma City. Both of these requests were refused, and the court tried the matters immediately.

The judgment and decree of the trial court is reversed, and the case is remanded to the court, with directions to render a judgment in conformity herewith, and to enter judgment in favor of W. R. White in so far as any judgment establishing liens for any work and labor done or materials furnished during the year 1932 is concerned, and, further, to grant to defendant White a new trial as to the personal indebtedness or judgment sought against him by Homer Doup, Troy Deering, and Foss Deering. Furthermore, defendant White shall have the right to request a jury trial thereof.

The Supreme Court acknowledges the aid of Attorneys W. L. Kimmel, W. E. Green, and J. C. Farmer in the preparation of this opinion. These attorneys constituted an ad-

visory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Kimmel and approved by Mr. Green and Mr. Farmer, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, GIBSON, and HURST, JJ., concur.