**KASISHKE et al. v. BAKER.**

No. 2944.

Circuit Court of Appeals, Tenth Circuit.

Dec. 18, 1944.

Rehearing Denied Jan. 29, 1945.

See, also, 144 F.2d 384.

Paul Pinson and Robert D. Hudson, both of Tulsa, Okl. (William M. Taylor, I. J. Underwood and M. C. Rodolf, all of Tulsa, Okl., on the brief), for appellants.

M. A. Breckinridge, of Tulsa, Okl., for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellee instituted this action against appellants to recover a one-tenth interest in certain oil properties, and, in the alternative, for an accounting. The petition alleged that appellee and appellant A. H. Kasishke were engaged in a joint adventure, and that under their agreement appellee was entitled to a one-tenth interest in all the properties involved in the action. He prayed that appellants be compelled to transfer a one-tenth interest in these properties to him, and, in the alternative, if the court found that the relationship did not constitute a joint adventure, that he then have an accounting of the profits.

Extensive findings of fact were made by the trial court. Upon substantial evidence, the court found that: In 1932 Kasishke, individually entered into a verbal contract with Baker, which provided in substance that they would engage in the oil business. Kasishke was to advance the necessary funds and render some personal services and Baker was to contribute his entire time for a nominal salary and was to have a ten per cent interest in the profits, and a like interest in all the properties after Kasishke had been repaid the moneys he advanced. The Coralena Oil Company was organized and the title to the oil properties involved was taken in the name of the corporation. Forty-four shares of the stock of this company were issued to Baker and the other stock was issued to Kasishke and his wife. The stock issued to Baker and the wife was assigned and delivered to Kasishke. In 1937 the Olive Drilling Company was organized to drill wells for Coralena. The stock in this company was likewise held by Kasishke and his wife, except one share issued to Baker to qualify him to serve on the board of directors.

The oil venture was very successful. Oil leases acquired in Osage County, Oklahoma, and in Russell County, Kansas, became valuable. The Osage County leases were substantially developed and may have paid out in 1935. Pursuant to Kasishke's suggestion, to which Baker agreed, the money realized from production of the Osage County leases was used for the exploration and development of the Russell County leases. In 1937 the oil properties were considered to be worth approximately $6,000,000.

In 1934, one Keppler, a geologist, was employed by Kasishke. Keppler requested a salary equivalent to a one-eighth interest in the properties. Kasishke pointed out that his demands were excessive, stating that Baker had only a one-tenth interest. In 1934 Keppler requested that his oral agreement be reduced to writing. Baker, at Kasishke's invitation, assured Keppler that he had a ten per cent interest in the company and that Kasishke had abided by all contracts made by him. Kasishke stated to one Moore, a driller and later superintendent of production of Coralena, that Baker had an interest in the company.

Kasishke and Baker were close personal friends. Kasishke made a will in which he willed all the stock in the companies to his wife, with a request that Baker be retained as manager of the companies so long as they continued to do business. Kasishke and Baker became estranged in 1938. Kasishke concluded that Baker was attempting to exercise dominion over the forty-four shares of stock of Coralena outstanding in his name. Thereafter he pursued an offensive course of conduct toward Baker, which culminated in his resignation in 1939; Baker was without fault, and his resignation was justified.

The court found that the Coralena Oil Company and the Olive Drilling Company were mere instrumentalities organized by Kasishke as a convenience for carrying on his personal business. Title to all the properties in question was taken in the name of one or the other of the two companies, but the properties were held in trust for the benefit of Kasishke and Baker.

From all of the above findings, the court concluded that the undertaking constituted a joint adventure; that Baker was entitled to an accounting of ten per cent of the profits, and that appellants should convey to him an undivided one-tenth interest in the properties. Judgment was entered accordingly.

It is urged that Baker's interest in the property was contingent. It is argued that in any event his interest vested only after the money advanced by Kasishke had been repaid and the properties had

been paid out, and that those contingencies had not occurred at the time he resigned, and that therefore he could not share in the profits nor in the properties themselves. Concededly, parties may make a contract dependent upon future contingencies, and, if they do, no rights will accrue until the contingencies have been fulfilled.[1] Courts, however, do not favor such a construction and will not construe stipulations in a contract as conditions precedent unless required to do so by the plain, unambiguous language of the contract,[2] and ordinarily a court of equity will not place such a construction upon the provisions of a contract, especially where it will work a forfeiture.[3] In determining this question, the contract must be viewed in its entirety. As pointed out, the trial court made extensive findings of fact, and from a consideration of all the facts and circumstances, concluded that the agreement was effective from the date of its execution and that Baker's interest vested from that date, and that only his right to receive a return on his interest was postponed until Kasishke had been repaid and the properties had been paid out. This arrangement had continued for seven years. At the outset, Kasishke furnished approximately $300,000. This was his main contribution to the business. Baker devoted all his time and energy to the management of the joint enterprise for which he received only a nominal salary. At the end of that time the properties had a value of approximately $6,000,000. We agree with the conclusions of the court that Baker's interest attached from the date of the contract, and that the profits were earned and only his right to receive returns was postponed until the conditions were fulfilled.[4]

 It is further urged that in any event Baker terminated the agreement by resigning, and thereby forfeited his right to receive profits subsequent to such termination. The court found that Baker's withdrawal from the enterprise was brought about by the deliberate conduct of Kasishke and that Baker was in no wise at fault. This finding is amply supported by the record. It would indeed be strange if one could use his own wrongful conduct to deprive another of his interest in a common enterprise. Where such is the case, the wronged member may demand a full and complete accounting at the hands of the wrongdoer.[5]

It is urged that the arrangement did not constitute a joint adventure. It is argued that this follows from the facts that Baker's interest was dependent upon the contingencies already noted; that there was no agreement to share the losses; that there was no equal right of management; that there was no joint interest in the property; that the contract was terminable at the will of either party; and that the enterprise was not limited to a specific venture.

 It is impossible to define the relationship of joint adventure with exactitude and precision. In many respects it is analogous to a partnership, the main difference being that a joint adventure is more limited in its scope of operations than a partnership.[6] In the main, some of the relevant factors of a joint adventure are that there must be joint interest in the property; there must be an agreement, express or implied, to share in the profits and losses from the venture; there must be action and conduct showing co-operation in the property.[7] It has been held that it is not absolutely necessary that there be participation in both profits and losses.[8] In determining whether one shares in the losses, the fact that one works for a nominal salary, thus losing a part of the value of his services, will be taken into account.[9] Oklahoma has held

[1] Northwestern Nat. Life Ins. Co. v. Ward, 56 Okl. 188, 155 P. 524; McCullough, Inc., v. Doggett, 176 Okl. 8, 54 P. 2d 184.

[2] Southern Surety Co. v. MacMillan Co., 10 Cir., 58 F.2d 541.

[3] Lucy v. Davis, 163 Cal. 611, 126 P. 490.

[4] Kerrick v. Stevens, 55 Mich. 167, 20 N.W. 888; Miller v. Walser, 42 Nev. 497, 181 P. 437.

[5] Karrick v. Hannaman, 168 U.S. 328, 18 S.Ct. 135, 42 L.Ed. 484; Beller v. Murphy, 139 Mo.App. 663, 123 S.W. 1029; Zimmerman v. Harding, 227 U.S. 489, 33 S.Ct. 387, 57 L.Ed. 608.

[6] Simpson v. Richmond Worsted Spinning Co., 128 Me. 22, 145 A. 250; Atlas Realty Co. v. Galt, 153 Md. 586, 139 A. 285; Chisholm v. Gilmer, 4 Cir., 81 F. 2d 120; Hobart-Lee Tie Co. v. Grodsky, 329 Mo. 706, 46 S.W.2d 859.

[7] White v. A. C. Houston Lbr. Co., 179 Okl. 89, 64 P.2d 908; Yeager v. Graham, 150 Kan. 411, 94 P.2d 317.

[8] E. D. Bedwell Coal Co. v. State Ind. Comm., 157 Okl. 227, 11 P.2d 527.

[9] Davidson v. Shaffer, 153 Kan. 661, 113 P.2d 90; Seymour v. Wildgen, 10 Cir., 137 F.2d 160.

116

that a joint venture may consist in an agreement to do a single act or in an agreement to engage in some particular line of business.[10]

While it is possible to lay down the general characteristics of a joint adventure, in the end, whether a certain transaction constitutes such a relationship can be determined only from a full consideration of all the relevant facts and circumstances in each particular case.[11] That the transaction in question is more limited in scope than a general partnership is evidenced by the finding that the Osage County leases were substantially developed in 1935, and that the proceeds therefrom were invested in the Russell County leases only after further consultation between Kasishke and Baker. The conclusion of the trial court that the transaction constituted a joint adventure is amply sustained by the record.

It is argued that under the established public policy of Oklahoma a corporation may not be a party to a joint adventure, and that therefore in any event the transaction cannot be upheld. It may be conceded that a corporation may not enter into a general partnership agreement, but the law of Oklahoma is otherwise in regard to a joint adventure. Oklahoma has consistently held that a corporation may be a party to a joint adventure.[12]

It is quite clear that Coralena Oil Company and Olive Drilling Company were mere instrumentalities through which Kasishke carried on his personal business. All the stock in these companies, other than the qualifying shares issued to Baker, were issued to Kasishke and his wife. Moreover, all the stock issued to Mrs. Kasishke and to Baker was assigned by them and delivered into the possession of Kasishke. While the title to the property in question stood in the name of the corporations, it was in fact the property of Kasishke and of Baker, and the corporations were mere trustees for them.

A number of other assignments of error are urged as grounds for reversal. In the interest of brevity, we do not discuss them in detail. It is sufficient to say that we have examined each of them with particularity and find them without merit.

Affirmed.

---

[10] O. K. Boiler and Welding Co. v. Minnetonka Lbr. Co., 103 Okl. 226, 229 P. 1045.

[11] White v. A. C. Houston Lbr. Co., 179

---

Okl. 89, 64 P.2d 908; Yeager v. Graham, 150 Kan. 411, 94 P.2d 317.

[12] See Sand Springs Home v. Dail, 187 Okl. 431, 103 P.2d 524, and cases cited there.