No. 34,366

Jack Yeager, *Appellee*, v. L. M. Graham et al., *Appellees;*
Texokana Oil Company, *Appellant.*

(94 P. 2d 317)

Opinion filed
October 7, 1939.

*Glenn Porter, Getto McDonald, Dwight S. Wallace* and *William Tinker,* all of Wichita, for the appellant.

*A. V. Roberts, Benjamin F. Hegler* and *Verne Roberts,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Thiele, J.: The sole question presented by this appeal is whether the evidence at the trial warranted a finding that the Texokana Oil Company, hereafter referred to as the appellant, was a member of a mining partnership and as such liable to judgment.

The plaintiff filed his petition alleging that he entered into a contract with certain named defendants, not including the appellant, under which he was to perform as a driller in exploring for oil or gas on the north half of the northwest quarter of section 4, township 33, range 2 west, in Sumner county, Kansas, this being the land on which drilling operations were to be performed, and being a part of a large block of acreage. There being no controversy with respect thereto, we omit reference to allegations as to work done. The prayer was for judgment against the defendants other than the appellant for the amount claimed due, and for the establishment and foreclosure of his mechanic's lien. A receiver was appointed who took charge of the lease and equipment thereon. The appellant company filed its answer, alleging that it was the owner of certain drilling equipment used on the lease which it had rented to defendant L. M. Graham, that the equipment was not subject to a lien under the statutes of Kansas, and it prayed for an order that the equipment belonging to it be returned and delivered to it. To this answer the plaintiff replied that other defendants had entered into a joint adventure or copartnership with the appellant company by which appellant had agreed to and did furnish money and supplies, and that the same were furnished not as a rental matter but as a part of carrying on the operations in the search for oil and gas on the Dawson lease, being on the real estate above specifically described; that all of said defendants were to contribute in the joint venture to the end that a test would be made on the property and all of said parties be interested in the development of the lease, in the costs and profits, if any, and to this end the appellant company furnished the goods, wares, equipment, etc., set forth in its answer, and thereby became liable to plaintiff and to intervenors who had filed claims for similar services. On the same day the answer was filed, on leave obtained, the plaintiff amended his petition to charge that the appellant company and other defendants had entered into a joint adventure and partnership for the purpose above mentioned and the appellant had agreed to furnish cash in the sum of $2,500, as plaintiff was informed, and various materials to be used in said development, and by reason of the copartnership and joint adventure had become bound to pay laborers and materialmen the respective amounts due to them for work, labor and supplies on the Dawson lease. Thereafter the appellant filed its anwser to the amendment to the petition denying that it had any interest in the

Dawson lease or that it was in any way a partner or copartner or interested in any way as a joint adventurer with other named defendants in the described Dawson lease.

At the trial evidence was introduced to which reference is hereafter made, and the trial court concluded that the equipment on the leasehold estate was placed there with intention of removal; that the development work was done and performed by a partnership composed of the appellant company and certain named defendants, and that the partnership and each member thereof, upon whom service of summons had been had, was liable for such labor and materials as were furnished and used upon the lease. The trial court further found that the title to the equipment described in the inventory of the receiver was vested in the partnership found to exist, the partnership being in the nature of a mining partnership or copartnership for the purpose of development of the leasehold described and other leases in the surrounding vicinity and as described in the pleadings. The trial court further found that the leasehold estate was subject to cancellation for failure to further develop. On these findings the court denied a mechanic's or labor lien, but awarded to the plaintiff and other claimants judgments for specific amounts against the partnership composed of the appellant and certain named defendants. Other parts of the judgment need not be here noted.

Thereafter appellant moved for a new trial, the principal ground being that the finding it was a mining partner with other defendants was contrary to the evidence. This motion was denied. Thereafter it filed a petition for a rehearing of its motion for a new trial, alleging that certain witnesses, although subpoenaed, were unavoidably absent and their testimony was not available at the hearing of the motion for new trial, and that affidavits would be presented on the hearing. These affidavits were produced at the hearing of the petition and thereafter the prayer thereof was denied. Appeal to this court followed.

Under proper assignments of error appellant presents for our consideration three propositions, which we summarize: (1) That the appellees did not discharge the burden of establishing a mining partnership so far as attaching liability as a mining partner on the appellant is concerned; (2) the activities of the appellant in connection with drilling on the Dawson lease were insufficient to serve as the basis of the finding that it is chargeable as a mining partner,

and (3) the appellant, as a matter of law, cannot be held as a mining partner by reason of the nonexistence of the fundamental prerequisites of a mining partnership.

Discussion of these propositions requires a review of the evidence, but in that connection it may be remarked that limits of space preclude reference to the many citations of authority in the briefs or to a detailed recital of the evidence as disclosed in the abstracts. Insofar as the evidence is concerned, we need only recite it sufficiently to tell the story of the trial and to ascertain whether the facts disclosed are sufficient to support the findings of the trial court. We are not concerned with testimony from which the trial court might have reached a different conclusion.

One Westfall owned an oil and gas lease on the real estate specially described above and referred to as the Dawson lease, and he and one Fine owned other leases on lands in the vicinity. In September, 1936, they made a contract with L. M. Graham, one of the defendants, whereby they conveyed to Graham a one-half interest in the Dawson lease and agreed to convey to him certain other leases on over 400 acres on near-by lands and to deliver to him good and sufficient purchase agreements (so-called bottom-hole orders) of five oil companies, totaling $15,000, upon his complying with his agreement to drill a well at his own expense on the Dawson lease. L. M. Graham sold three of the leases covering 160 acres to the appellant for $3,000, to be paid when the Dawson well was completed. In carrying out his agreement, L. M. Graham had associated with him his brother, Frank Graham, who was the president of the appellant company, and his nephews, Dolisi Graham and Eugene Graham. The machinery with which to drill the well was obtained by L. M. Graham from the appellant. In his testimony he stated that he borrowed it and he also stated that he had purchased it and expected to pay for it with the proceeds of the bottom-hole orders upon completion of the well. It was shown that certain of the equipment was procured by the appellant company from a dealer under a conditional sales agreement calling for the payment of $4,000 in installments, the agreement stating it was understood and agreed that the tools were to be used in Sumner county approximately eleven miles west of Wellington, and so long as the debt remained unpaid the buyer would not remove the same without written notice to the seller. It was also shown that a draw works was purchased by the appellant from another dealer for the sum of $2,000, appellant de-

livering its installment note for $1,500 and a chattel mortgage on the draw works, the mortgage stating:

"This unit will be used in drilling a well in Sumner county, Kansas, approximately 11 miles west Wellington, Kansas."

And further that—

"Said mortgagor further promises that he will . . . not use or permit them [draw works] to be used for hire . . . and will not attempt to sell, assign or dispose of said goods and chattels or any interest therein."

Without attempting to recite the details, there was evidence that Frank Graham was the president of the appellant company and that he sent at least one of the employees of the company to work on the Dawson lease and that the employee received expense money and perhaps some wages by drafts on the appellant company. Frank Graham also sent to the Dawson lease other men who were employed there. A number of witnesses stated that Frank Graham told them he was associated with L. M. Graham and others and that he had put money in the lease, one witness putting the amount at $25,000. One Chaffee furnished fuel oil used on the lease and was paid for a part of it by drafts on the appellant company. He had some trouble with the drafts and threatened to quit. Frank Graham then told him to continue and stated he would see that Chaffee didn't lose any money. In the aggregate appellant paid him about $1,800. There was also testimony that abstract fees and recording fees were paid by drafts of the appellant company, as well as bills of the city of Wellington for water used on the lease, and other bills for other expenses. The evidence also showed that L. M. Graham, in addition to the $15,000 of purchase-money orders or bottom-hole orders above mentioned, had one for $3,000 from the appellant and that this last one was paid. The others were not paid, as the well was not completed to the contract depth.

Before entering upon a discussion of appellant's contention, it may be well to note that in plaintiff's pleadings the charge is that defendants were engaged in a joint adventure. In the findings of the trial court, it found the relationship to be a—

"Partnership, being in the nature of a mining partnership or copartnership existing for the purpose of the development of the leasehold described above and other leaseholds in the surrounding vicinity and described and set forth by the various pleadings in this case."

Whatever the technical distinction may be between a mining partnership and a joint adventure, we think that whether the present

relationship be denominated as one or the other is not particularly important. (See *Curtis v. Hanna,* 143 Kan. 186, 53 P. 2d 795; annotation, "What amounts to a joint venture," 48 A. L. R. 1055, 63 A. L. R. 909; articles, 8 J. B. A. Kan. No. 1, p. 20.)

Appellant contends appellees did not discharge the burden of establishing there was a mining partnership or joint venture insofar as concerns its liability. There is no doubt that such burden was on the appellees. (See *Curtis v. Hanna,* supra, syl. ¶ 2.) To maintain that burden, however, appellees did not have to prove a formal written or oral contract; whether there was such a relation between the parties charged, including the appellant, could be gathered from the surrounding circumstances and from the mutual acts and conduct of the parties. (*Mountain Iron & Supply Co. v. Branson,* 134 Kan. 818, 8 P. 2d 407; *Curtis v. Hanna,* supra, and citations therein.) Appellant directs our attention to *Clark v. Crouse,* 130 Kan. 177, 285 Pac. 577, where it was said:

"The existence of a partnership cannot be established by conjecture, or the statement of a witness that he understood a partnership existed between certain members, nor by other hearsay testimony. As between a member of a partnership and third parties, a partnership may be shown by circumstantial evidence warranting an inference of the existence of the relationship, but not where there is only a slight basis for the inference. (47 C. J. 727, § 136.)" (p. 180.)

Appellant also directs our attention to authorities holding that in the case of ordinary mining partnerships something more will be required to raise the presumption of liability arising from persons holding themselves out to the world as partners than would be necessary in the case of an ordinary partnership. (*Thompson v. Crystal Springs Bank,* 21 F. 2d 602, and cases cited.) From the above it is argued there is no evidence which warrants any conclusion appellant was a member of the partnership and subject to liability as a partner.

The above leads to a discussion of appellant's contention that its activities in connection with the drilling of the Dawson well were insufficient to serve as a basis of the finding that it was liable as a mining partner. Reliance is placed on *Clark v. Crouse,* supra, where there was no admission of a partnership relation nor any direct evidence concerning it. Boyle, the person sought to be charged, had been at the well in question, but this court said that what he did there was more consistent with the position of an employee than

a principal, and the fact he directed the plaintiffs to go after pipe and offered to pay for the trip might have been done by a foreman, and was insufficient to warrant an inference of existence of a partnership. As the trial court viewed the present matter, and as we view it, what is said in the last-mentioned case is not conclusive here. There is material difference in the facts. It must not be overlooked that the appellant is a corporation and could act only by and through its officers and agents. Without intending to make a complete statement thereof, the evidence here showed clearly that the appellant furnished the drilling rig and equipment necessary to be used in developing the Dawson lease under conditions heretofore noted; that its president sent one of its employees to attend to certain duties on the lease; that he arranged for other employees; that the appellant honored many drafts on it for expenses of various kinds; that it advanced the amount of a bottom-hole order even though the conditions thereof had not been met; that it was the assignee of leases on other lands in the vicinity and was vitally interested in the exploration for oil or gas, and in the completion of the well on the Dawson lease.

We have examined cases from other jurisdictions cited by appellant. In *Gardner v. Wesner*, (Tex. Civ. App.) 55 S. W. 2d 1104, it was held that:

"In order to constitute a mining partnership (sometimes called a joint venture) there must be not only a joint ownership of the mining property (which of itself creates only the relation of cotenancy), but also a joint operation. .'The actual working of the mine by the joint owners is essential to a mining partnership.'" (p. 1106.)

And that a loan of casing to be returned if the well was unprofitable and to be kept and paid for if productive was nothing more than a loan of a chattel with provision for a sale on contingency; that the agreement for sharing the net profits was by way of compensation for use of the chattel and there was no joint venture.

In *Mattocks v. Great Northern R. Co.*, 94 Wash. 44, 162 Pac. 19, the railway company made a contract with one Gibbons to furnish him with drilling equipment and certain funds to be used in exploring for oil. Gibbons abandoned the work and it was sought to hold the railway company as a mining partner. The supreme court, reversing the trial court, held there was no joint ownership of property, or joint enterprise in the sense of two or more persons working property jointly owned by them. After citing authorities holding

that to extend such contracts to cover additional liability on the part of those furnishing the money would be to hold in effect that mere agreements to provide a definite sum to another to be used in a mining venture made the person advancing liable for all expenses incurred, and that such was not the law, it held that the contract before the court was merely a grubstaking contract, and not evidence of a mining partnership.

We do not think those cases, and others cited, are at all conclusive of the case at bar. Certainly it may not be said the trial court's conclusion that there was a partnership in the nature of a mining partnership was based on mere conjecture. If the conclusion is wrong, it is by reason of the nonexistence of fundamental prerequisites of a mining partnership, a subject presented by appellant under its third proposition. Some of the authorities previously mentioned touch upon the elements of a mining partnership. In discussing this proposition, the appellant and appellees direct our attention to many other authorities. Both rely on *Gilbert v. Fontaine*, 22 F. 2d 657, where the court quoted approvingly from 40 C. J. 1143, viz.:

"A partnership may be formed to work mines owned or leased by any or all of the individual members, but the parties must be associated together in the ownership or possession of the property in some manner; and although an equitable interest is sufficient, there must be an interest in the property or a right to possession in the right of the partnership as distinguished from that of the owner, and a mere license or contract of employment is not a sufficient interest in the mine to support a mining partnership." (p. 660.)

A full discussion of mining partnerships, especially as applied to the oil and gas industry, may be found in 4 Summers, Oil & Gas (Perm. ed.) 139 *et seq.*, where many of the cases referred to in the briefs are mentioned. After discussing development of such partnerships, and with especial reference to the state of Oklahoma, which has considered the question on a number of occasions, it is said:

"Finally, in *White v. A. C. Houston Lumber Co.*, in an attempt to reconcile all of the cases, the court laid down three requirements for the creation and existence of a mining partnership; coöwnership, joint operation and an express or implied agreement to share in profits and losses." (p. 156.)

The above statement seems to be based on that part of *White v. A. C. Houston Lbr. Co.*, 179 Okla. 89, 64 P. 2d 908, reading as follows:

"Each case of mining partnership or joint adventure must necessarily be determined by its own facts. However, by examination of cases heretofore decided by this court, we can devise a test consisting of three requirements

which must always be present in order to form the relationship: (1) There must be joint interest in the property by the parties sought to be held as partners; (2) there must be agreements, express or implied, to share in the profits and losses of the venture; and (3) there must be actions and conduct showing coöperation in the project. None of these elements alone is sufficient. (Citing cases.)" (p. 91.)

The above statement is as favorable to the appellant as any brought to our attention either by the briefs or our independent research. Taking up the elements mentioned in inverse order, we think the trial court had a substantial basis in the evidence for finding the appellant's actions and conduct showed coöperation in the development of the Dawson lease, and that from all the circumstances it was warranted in concluding there was an agreement to share in the profits and losses of the venture. The only element remaining was whether the appellant had a joint interest in the property. It is true that the record title to the Dawson lease or any interest in it did not stand in the name of the appellant but, as was said in *Gilbert v. Fontaine,* supra, an equitable interest is sufficient. Was there evidence that warranted the trial court in concluding appellant did have such an interest? What reason was there why the appellant should obligate itself for the purchase of machinery which was placed on the lease, or why it should send one or more of its employees to the lease to engage in the exploration, or why it should advance large sums of money for recording fees, fuel and water bills and other expenses? Appellant says it had other leases in the vicinity and was interested in the exploration of the Dawson lease for that reason. But does that assertion demonstrate the trial court erred in concluding appellant's activities were because it had an interest in the Dawson lease? We do not think so. Whatever the situation might have been between those engaged in promoting the exploration of the lease, and whatever their rights and liabilities with respect to each other, the evidence here showed that appellant exercised rights of ownership in sending its employees to the lease in question, in hiring others to work thereon, in supplying equipment to be used thereon and in paying for supplies used in prosecution of the work and the development of the lease. Appellant, to all appearances, was an owner. Third parties, aware of the situation, had a right to rely on such appearances (*Clark v. Crouse,* supra). We think the evidence rather logically leads the trial court to conclude that appellant would not have done all that it did had it not had an interest in the lease.

The judgment of the trial court is affirmed.