OPCO, INC., a corporation, Appellant,

v.

Dean C. SCOTT and Cecil G. Lalicker, Appellees.

No. 7224.

United States Court of Appeals Tenth Circuit.

Aug. 1, 1963.

Rehearing Denied Sept. 4, 1963.

---

Ferd E. Evans, Jr., Wichita, Kan. (Lester L. Morris, Verne M. Laing, Ralph R. Brock, Joseph W. Kennedy, and C. Robert Bell, Jr., Wichita, Kan., were with him on the brief), for appellant.

Robert Martin, Wichita, Kan. (George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., W. F. Schell, Laverne Morin, and Robert M. Collins, Wichita, Kan., were with him on the brief), for appellees.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

Dean C. Scott and Cecil G. Lalicker instituted this action in the United States Court for Kansas against Opco, Inc., a corporation, to quiet their title to certain oil and gas leases covering land in the East Antelope Pool in Marion County, Kansas. More specifically, the objective of the action was to remove a cloud upon the title of plaintiffs to the leases created by an affidavit which D. E. Kays made and caused to be placed of record stating that he was the holder of an option to purchase under certain terms and conditions all of the oil and gas leases acquired directly or indirectly by plaintiffs covering the land therein described and giving notice that all persons purchasing an interest in such leases should take notice of his option. The defendant answered and counterclaimed. By the counterclaim, it asserted that it was entitled to an interest in the leases and sought equitable relief respecting such interest. The court made findings of fact and conclusions of law and entered judgment quieting title in plaintiffs.

Plaintiffs owned oil and gas leases covering land in an area sometimes referred to in the record as the five-section block. Plaintiffs and D. E. Kays entered into a written agreement dated July 20, 1959. A map was attached to the agreement showing the land within the block. The agreement obligated Kays to pay plaintiffs a specified sum in cash and to drill a test well on a specified quarter sec-

tion of the land. And it obligated plaintiffs to assign to Kays the leases, reserving to themselves a one-sixteenth overriding royalty, subject to exchange for a one-eighth carried working interest in the leases at their option, and to supply all geological services which Kays requested during actual drilling operations of the specified well and subsequent wells, free of cost to Kays. The agreement did not contain any language indicating an intent or purpose to negate or restrict the right of either of the parties to obtain leases on other acreage. The specified well was drilled, the geological services in connection therewith were furnished, and the leases were assigned. The leases involved in this action cover land outside of the five-section block. And the counterclaim of the defendant is based upon an alleged oral agreement said to have been entered into about five days after execution of the written agreement in which it was agreed that if Kays would drill a total of five wells on the acreage within the five-section block and would pay plaintiffs double the amount which they had to pay landowners for leases outside the block, Kays would have the right to acquire such leases from plaintiffs and would carry plaintiffs for a one-eighth working interest, the same as in the written agreement covering the leases on land within the block. Whether the parties ever entered into such an oral agreement was a controverted issue of fact at the trial of the case. The court resolved the issue against the defendant by expressly finding that no enforceable oral agreement was entered into subsequent to the written agreement. The finding is adequately supported by substantial evidence and therefore will not be disturbed on appeal.

■ Reversal of the judgment is urged on the ground that a joint adventure between plaintiffs and D. E. Kays, acting as trustee for defendant, resulted from the written agreement; that arising out of such joint adventure, a fiduciary relationship was created between the parties which obligated plaintiffs to refrain from acquiring leases on adjoining acreage outside the block underlain by the same petroleum reservoir; that plaintiffs acquired the leases here in question in violation of their joint-adventure duties and obligations; and that plaintiffs should be required to perform their joint-adventure duties and responsibilities to defendant in respect to such leases. A joint adventure is defined in general terms to be a special combination of two or more persons devoted to a specific enterprise in which profit is jointly sought without actual partnership or corporate designation. Blackner v. McDermott, 10 Cir., 176 F.2d 498. The relationship may arise from express contractual provisions or out of acts and conduct. But it must be based upon some form of agreement, either express or implied, from which it can be said that the minds of the parties met and united in a manner to create mutual obligations in respect to the subject matter. Appleman v. Kansas-Nebraska Natural Gas Co., 10 Cir., 217 F.2d 843. And, once formed, the relationship imposes upon the parties an obligation of loyalty and good faith in their dealings with each other within the framework of the enterprise. Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co., 10 Cir., 209 F.2d 917.

■■ Legal title to the leases in question was vested in plaintiffs and under the law of Kansas the burden of proof rested upon defendant to show the existence and breach of a joint adventure relationship which entitled it to an interest in such leases. Yeager v. Graham, 150 Kan. 411, 94 P.2d 317; Appleman v. Kansas-Nebraska Natural Gas Co., supra. And since the defendant failed to carry with success the burden of proof showing affirmatively that the oral agreement was entered into, it was not entitled to the fruits of a fiduciary relationship in respect to the leases covering the acreage outside of the five-section block.

Other grounds of challenge are directed to the judgment. But they are without merit and a discussion of them would not serve any useful purpose.

Affirmed.