STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,

v.

Fred F. LEHMAN, Administrator of the Estate of Milton E. Lehman, Deceased, Appellee.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,

v.

Walter C. WRIGHT, Administrator of the Estate of Donald Dean Wright, Deceased, As Revived in the Name of Margaret Wright, Administratrix De Bonis Non of the Estate of Donald Dean Wright, Deceased, Appellee.

Nos. 7447, 7448.

United States Court of Appeals
Tenth Circuit.

July 20, 1964.

Malcolm Miller, Wichita, Kan. (Robert C. Foulston, Wichita, Kan., with him on the brief), for appellant.

William A. Buckles, Burlington, Kan., and Joe Rolston, Wichita, Kan. (Clifford L. Malone, Wichita, Kan., with them on the brief), for appellees.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

These matters were tried to the court, and judgments were entered in each against the defendant insurance company which has taken this appeal.

An insured of the appellant by the name of Abe Cox was involved in an automobile accident in which there were killed two passengers in the automobile he was driving. Wrongful death actions were brought in the state court of Kansas by the representatives of each of the decedents against the insured. Judgments were obtained in each case against the insured, and executions were issued and returned unsatisfied. Thereafter affidavits in garnishment under the Kansas law were filed by the plaintiffs, served upon the appellant, which thereupon removed the garnishment actions to the United States District Court for the District of Kansas. Appellant filed its answering affidavit, and the appellees took issue therewith.

The insured, Abe Cox, at the time of the accident was driving a car which belonged to his brother, and consequently a portion of the appellant's policy which relates to non-owned automobiles must be construed. The insured had an agreement with M. Bruenger and Co., Inc. (which will be hereinafter referred to as the Company), whereby the insured pulled the Company's trailers with a truck-tractor which he owned. The tractor-trailers operated under the permits of the Company, and there was an agreement whereby the Company and the insured equally divided the profits and losses resulting from the hauling of merchandise. Certain agreed expenses in-

curred by the insured were deducted in order to arrive at the profit to be divided. The record shows that other persons who owned truck-tractors operated with the Company in the same manner. The Company would advise the tractor owner where a load should be picked up and when and where it should be delivered. This matter was handled by the Company by its dispatcher who contacted the tractor owners or drivers.

On the day of the accident, a tractor owned by one Bokey pulling one of the Company's trailers loaded with produce overturned in the vicinity of Lawrence, Kansas; it was necessary in order to prevent spoilage of the load that it be transferred as quickly as possible to another trailer and taken to its destination in Kansas City. When the dispatcher of the Company learned of the accident, he found that the tractor of the insured was unloading a Company trailer in Kansas City at the time, and decided it should return to the place of the accident in order that the load which had been spilled could be reloaded into this particular unit. The dispatcher advised the driver of the insured's tractor to return to the place of the accident as soon as he was unloaded. The dispatcher likewise called the insured in Leroy, Kansas, where he lived, advising him of the need to unload the produce from the overturned trailer and to reload it into the trailer being sent back from Kansas City and pulled by the insured's tractor. The insured was likewise requested by the dispatcher to hire some men in Leroy, Kansas, to assist with the reloading at the place of the accident. The insured, having been so advised, borrowed the car of his brother which was equipped with snow tires which he considered necessary for the trip, proceeded to hire the two decedents at Leroy, Kansas, and started on the trip to take them to the overturned truck-trailer. They started on the trip in his brother's car, as mentioned, and it was during the course of this trip that the fatal collision occurred.

The insurance policy issued by the appellant to the insured, Abe Cox, provided coverage for the use of non-owned automobiles by the named insured or a relative "and any other person or organization legally responsible for the use by the named insured" of a non-owned automobile. The policy under the definition portion thereof provided that the unqualified word "insured" includes the named insured and again "any person or organization legally responsible for the use thereof by the insured." The policy does not apply to "bodily injury of any employee of the insured arising out of and in the course of the insured's employment, * * *."

The question presented on this appeal is whether or not there is substantial evidence to support certain findings of the trial court. Of course if these are not clearly erroneous, the findings are followed by this court. *Imperial Paving Co. v. Horn's Crane Service Co.*, 316 F. 2d 28 (10th Cir.), and prior cases.

Under the oral agreement between the insured and the Company for the division of profits, the profit or loss to be shared equally by the insured and the Company was after the deduction of certain expenses, as indicated above. One of these expenses which is here pertinent was that of loading and unloading. Under the arrangement, the insured when loading or unloading a Company trailer would pay the labor for this purpose and then would be repaid or credited with such amount when determining the profit or loss for the trip. The owner of the tractors operating under this agreement with the Company was not considered as an employee of the Company, was not carried on the payroll, and no withholding was made. The record shows that the decedents had worked for the Company before the day in question, and thus the matter of their pay was not discussed by the insured and the decedents when he hired them for the purposes mentioned above. The representatives of the decedents filed workmen's compensation claims against the Company and received payment thereon.

The court below found that the insured of the appellant and the Company at the time of the accident were joint adventurers, but only for the purpose of hauling the damaged cargo from the truck wreck near Lawrence, Kansas, to its destination in Kansas City, Kansas. The court found that the transportation of the decedents by the insured at the time of the accident was thus not a part of the joint venture, and at the time of their deaths, they were the employees of the Company and not the employees of the insured. The court also concluded that the Company was not an insured under the policy, that the decedents were not employees of the insured, and that the appellant was liable under its contract of insurance on the claims by the representatives of the decedents. The exclusion of coverage of employees of an insured was thus not applicable under the findings. The Kansas court considered a similar exclusion clause in Leonard v. Maryland Casualty Co., 158 Kan. 263, 146 P.2d 378.

The record shows that the parties at the time of the trial expected that the wages of the decedents would have been paid, had they performed their work, by the cargo insurance carrier. The Company maintained cargo insurance as one of its costs of doing business not chargeable to the equal division of profits with the tractor owners. The record however does not show in this respect any more than the expectations of the Company's employees as to payment. The record shows that the labor under ordinary circumstances that was necessary for loading and unloading was arranged for and hired by the insured. The record shows that the cost of such labor was charged as an expense in arriving at the division of profits. Since the record clearly shows that this was the practice followed under the arrangements between the tractor owners and the Company, including the insured, and since there is nothing in the record to show that this particular hiring should be treated in any other manner, the joint venture had commenced at least at the time that the insured hired the decedents in Leroy, Kansas. Apparently at about this same time, the insured's tractor was returning from Kansas City to the place where the produce was spilled on the highway, thus the equipment of insured and the assistants were converging on the place where the overturned truck was located. This was all part of the joint venture between the insured and the Company. It was all necessary in order to carry out the transportation of the loaded produce from the roadside near Lawrence, Kansas, to Kansas City. In this and all respects, it was no different as far as the consequences we have under consideration from any other loading. There is testimony in the record, as indicated, that it was expected that the cargo insurance company would pay the wages for the decedents or that the wages would be charged as an expense of reloading of the overturned truck. For the purposes here considered, this makes no difference as the insured and the Company had undertaken the joint venture of loading the Company trailer to be pulled by the insured's tractor. Yeager v. Graham, 150 Kan. 411, 94 P.2d 317; Kasishke v. Baker, 146 F.2d 113 (10th Cir.); Appleman v. Kansas-Nebraska Natural Gas Co., 217 F.2d 843 (10th Cir.).

The finding of the trial court to the effect that the joint venture was limited only to the hauling of the damaged cargo from Lawrence to Kansas City is not supported by substantial evidence, and its finding that the transportation of the decedents was not in furtherance of the joint venture is likewise not supported by substantial evidence. The insured at the time of the accident was not an employee of the Company, he was not a volunteer, but he was performing duties of the type which he customarily performed pursuant to his agreement with the Company, and his equipment was being used in the performance of this same agreement. Thus we find that the transportation of the decedents by the insured was in furtherance of and part of the joint venture between the

Company and the insured. The Kansas court considered the nature of joint ventures in Wenzel Machinery Rental & Sales Co. v. Adkins, 189 Kan. 435, 370 P. 2d 141.

The question when the joint venture began is the basic question presented on this appeal, and since the case is to be remanded, the consequences of our answer to this question on the other aspects of the case must be determined by the trial court since the original proceeding reached a different result on this point.

Reversed and remanded for further proceedings in conformance with this opinion.