**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TERRA VENTURE, INC.; TERRA
VENTURE REALTY, INC.,

     Plaintiffs - Appellants,

v.

JDN REAL ESTATE-OVERLAND
PARK, L.P., a Georgia Limited
Partnership; JDN REALTY
CORPORATION, a Georgia
corporation; JDN DEVELOPMENT
COMPANY, INC., a Delaware
corporation; BELLE MEADE
ACQUISITION CORPORATION, a
Georgia corporation; DEVELOPERS
DIVERSIFIED REALTY
CORPORATION,

    Defendants - Appellees.

No. 04-3492

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 02-CV-2593 GTV)**

---

William M. Modrcin (Erin N. Schmidt with him on the briefs), Stinson Morrison
Hecker LLP, Kansas City, Missouri, for Plaintiffs-Appellants.

Robert W. Tormohlen (Leland H. Corley with him on the brief), Lewis Rice &
Fingersh, L.C., Kansas City, Missouri, for Defendants-Appellees.

Before **LUCERO**, **McKAY**, and **McCONNELL**, Circuit Judges.

**McKAY**, Circuit Judge.

This lawsuit concerns the division of labor and capital associated with 100 acres of undeveloped property in Overland Park, Kansas. Originally, Plaintiffs entered into an agreement to purchase this plot of land from a company called Ranch Mart, Inc. However, before closing with Ranch Mart, Plaintiffs entered into an agreement with Defendants whereby Plaintiffs assigned their rights and interests in the land to Defendants ("Assignment Agreement"). Plaintiffs conveyed all of their rights in the land to Defendants, and Defendants became the owners of the property.

The plan was to develop the land as commercial real estate. Plaintiffs signed an additional agreement with Defendants which appointed Plaintiffs as the exclusive selling and leasing agent for the project, paid to Plaintiffs a $300,000 development fee, and offered a conditional earnout fee to Plaintiffs, payable only if the project achieved certain profits levels ("Fee Agreement"). Defendants paid the development fee to Plaintiffs, reimbursed Plaintiffs for pre-development expenses, and paid Plaintiffs in excess of $250,000 in market commissions on sales and leases of property within the project.

Notably, the Fee Agreement indicated that the project should be referred to as a "joint venture" of Plaintiffs and Defendants in "press releases in industry and

financial publications . . . ." Memorandum and Order, 6 (D. Kan. Oct. 14, 2004).

The Fee Agreement also contained several "Miscellaneous" clauses, including the

following:

> 8.e.  This Agreement contains the entire agreement of the parties hereto with respect to the subject matter hereof, *and no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein or incorporated herein by reference shall be of any force or effect.*
> 8.g.  No amendment to this Agreement shall be binding on any of the parties hereto unless such amendment is in writing and is executed by the party against whom enforcement of such amendment is sought.
> 8.h.  Time is of the essence of this Agreement.

*Id*. (emphasis added).

Plaintiffs claim that they were led to believe, through oral representations,

that Defendants would develop the property and that the construction period

would last about one year. *See id*. at 7.  It is uncontroverted, however, that the

Fee Agreement contained no express provision requiring Defendants to develop

the property at all, much less within a finite time.  Nonetheless, Defendants did

take on the development and construction of the property.  The project suffered

numerous delays, some of which might have been caused when the Securities and

Exchange Commission forced the CEO of one of Defendant companies to resign.

At present, there are several retailers and businesses located on the property.

Plaintiffs maintain that Defendants were expressly obligated to develop this

property within a finite time and that their failure to adequately perform breached

both their contractual and fiduciary duties.  Plaintiffs argue that they are also owed for leasing commissions and an accounting.

The district court granted summary judgment for Defendants on all claims, and it is from this judgment which Plaintiffs now appeal.  The district court properly applied Kansas law to this diversity jurisdiction case.

We review grants of summary judgment de novo, "applying the same legal standard used by the district court." *Cirulis v. UNUM Corp.*, 321 F.3d 1010, 1013 (10th Cir. 2003).  Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In order to determine whether the case presents any issue of material fact, "we view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment . . . ." *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir. 1999).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit," and "[a] dispute over a material fact is 'genuine' only if a rational jury could find in favor of the nonmoving party on the evidence presented." *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002).  To avoid summary judgment, the nonmovant must make a showing sufficient to

establish an inference of the existence of each element essential to the case with respect to which that party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002). Further, we may "affirm a grant of summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Plaintiffs argue that the district court erred in determining that Defendants had no duty to develop the property. Our review of the record supports that no provision in the Fee Agreement or Assignment Agreement obligated Defendants to develop the property. Where, as here, a contract is unambiguous, we will not, under the guise of contract interpretation, write a new contract for the parties to achieve some perceived equitable result for which the parties themselves did not bargain. *Meiners v. Univ. of Kan.*, 239 F. Supp. 2d 1175, 1199 (D. Kan. 2002), *aff'd*, 359 F.3d 1222 (10th Cir. 2004); *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 738 P.2d 866, 871 (Kan. 1987) ("[W]ords cannot be written into the agreement imparting an intent wholly unexpressed when it was executed.).

In addition, the Fee Agreement contained a clause that expressly limited any oral representations or "understandings" from being given force or effect.

*See* Memorandum and Order, 6. Therefore, while in instances where the contract is unambiguous and we determine the meaning of the contract exclusively from the document itself, we are even more firmly bound here by a clause which expressly prohibits incorporating verbal representations into the contract.

Plaintiffs also point to the "time is of the essence" provision in paragraph 8(h) of the Fee Agreement to suggest that it reflect the parties' intention that Defendants develop the project in a "timely" manner. This suggestion misses the mark: the "time is of the essence provision" applies only to obligations actually created in the Fee Agreement, not to nonexistent terms. As the Second Circuit explained:

> A "time is of the essence" clause in a contract does not in itself ordinarily impose an independent time constraint on one or both of the parties to the contract. Its commonly understood meaning is that insofar as a time for performance is specified in the contract, failure to comply with the time requirement will be considered to be a material breach of the agreement.

*Retrofit Partners I, L.P. v. Lucas Indus., Inc.*, 201 F.3d 155, 160 (2d Cir. 2000).

Alternatively, Plaintiffs claim that having once begun developing the property, Defendants assumed a duty to continue under the implied covenant of good faith and fair dealing.

> [I]n order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiffs must (1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term of the contract which the defendant allegedly violated by failing to abide by the good faith

spirit of that term.

*Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996) (internal quotations omitted). "The implied covenant is derivative in nature in that it does not create or supply new contract terms, but it grows out of existing ones." *Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1233, 1243 (D. Kan. 2003); *Bank IV Salina, N.A. v. Aetna Cas. & Sur. Co.*, 810 F. Supp. 1196, 1204 (D. Kan. 1992) ("The duty of good faith assumes the existence of a contractual right; it does not create one."). We agree with the district court that, because "the Fee Agreement did not impose an obligation for Defendants to develop the land, such an obligation cannot be created through application of the implied covenant." Memorandum and Order, 19.

Plaintiffs have attempted to make an impossible and impermissible leap from the parties' understanding that Defendants *might* develop the project to the creation of an express provision obligating Defendants to develop the project within a specific time. We cannot conclude that Defendants' failure to develop the property at a particular rate of time breached any contract provision.

Plaintiffs next argue that Defendants breached their fiduciary duty by failing to develop the property in a timely manner. Under Kansas law, "[a] fiduciary relation . . . exist[s] in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith

-7-

and with due regard to the interests of the one reposing the confidence." *Denison State Bank v. Madeira*, 640 P.2d 1235, 1237 (Kan. 1982). Kansas courts have recognized two types of fiduciary relationships:

> (1) those specifically created by contract such as principal and agent . . . and those created by formal legal proceedings such as guardian and/or conservator . . . and (2) those *implied in law* due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions.

*Id*. at 1241 (emphasis added). We have held that "conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law." *Rajala v. Allied Corp.*, 919 F.2d 610, 615 (10th Cir. 1990). An ordinary business relationship should not be construed as a fiduciary relationship, absent clear intent by the parties. *Gottstein v. Nat'l Ass'n for Self Employed*, 53 F. Supp. 2d 1212, 1222 (D. Kan. 1999) (citing *Denison*, 640 P.2d at 1243-44).

We first consider whether the parties, by calling the project a "joint venture" in press releases, created a fiduciary relationship. We note that "[u]nder Kansas law, in general, a 'fiduciary duty' exists among joint venturers." *In re Klippel*, 183 B.R. 252, 259 (Bankr. D. Kan. 1995) (citing *First Nat'l Bank & Trust v. Sidwell Corp.*, 678 P.2d 118 (Kan. 1984)). We do not believe the record supports a finding that Plaintiffs and Defendants had, in fact, formed a joint venture at all. "A joint adventure is defined in general terms to be a special combination of two or more persons devoted to a specific enterprise in which

profit is jointly sought without actual partnership or corporate designation. The relationship may arise from express contractual provisions or out of acts and conduct." *Opco, Inc. v. Scott*, 321 F.2d 471, 473 (10th Cir. 1963) (citation omitted). "When the relationship of joint adventurers exists, the parties stand in a close relationship of trust and confidence and are bound by the same standards of good conduct and square dealing as are required of partners." *Amoco Prod. Co. v. Charles B. Wilson, Jr., Inc.*, 976 P.2d 941, 949 (Kan. 1999) (quotation omitted). The factors for determining whether a joint venture exists are:

> (1) the joint ownership and control of property; (2) the sharing of expenses, profits, and losses, and having and exercising some voice in determining the division of net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.

*Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 823 (Kan. 1979).

Plaintiffs admit that there was no joint ownership and control of the property. As to the second factor, it is noted that Defendants paid all expenses on the project and reimbursed Plaintiffs for pre-development expenses incurred. While Plaintiffs were eligible for a conditional earnout fee, they received a $300,000 development fee regardless of whether the project lost money, and Plaintiffs had no voice in determining the division of net earnings. With respect to the third factor, Plaintiffs had very little control over the project (no veto or

approval of leases or sales, no role in development of property) other than being the exclusive marketing agent of the property. The fourth factor, the intention of the parties, points to their holding themselves out to the public (in press releases) as a joint venture, but they made no other substantive step to form this relationship. Finally, the fifth factor, the fixing of salaries, is not met because Plaintiffs had no control over the salaries paid to Defendants.

Based on the analysis of the above factors, we agree with the district court that the parties did not intend to form a joint venture and, therefore, that Defendants did not undertake a fiduciary duty.

We next consider whether a fiduciary duty existed by virtue of the parties' conduct–a fiduciary duty implied in law. Plaintiffs claim that, because Defendants controlled so very much of the project (the development, leases and sales, and potential earnout fee), Defendants assumed a duty to act on behalf of Plaintiffs. But the record supports that Defendants were acting in their own financial interests and not with any paternal consideration for Plaintiffs' pecuniary gain. We do not presume the existence of fiduciary duties and extend them to commercial transactions, where parties deal at arm's length for their mutual profit. *PulseCard, Inc. v. Discover Card Servs., Inc.*, 917 F. Supp. 1488, 1493 (D. Kan. 1996). The fiduciary relationship is one that is unique and extremely useful in our society; we will not determine that it is "implied in law"

-10-

with great ease or frequency, and certainly not with the facts alleged by Plaintiffs in this case.

Finally, Plaintiffs contend that "[t]he district court granted summary judgment in favor of [Defendants] on plaintiffs' claims for leasing commissions and an accounting *solely* on the basis that it had determined that [Defendants] had no duty to develop the property." Aplt. Br. at 37 (emphasis added). The district court based its decision on more than its finding of no duty. Plaintiffs bear the burden of presenting, with reasonable certainty, their damages for loss of future profits. *See Source Direct, Inc. v. Mantell*, 870 P.2d 686, 694 (Kan. 1994). The district court twice admonished Plaintiffs for failing to present evidence sufficient for the court to review a claim for damages. *See* Memorandum and Order, 24. Here, we are left in the same quandary; Plaintiff's entire argument that they are owed an accounting comprises two sentences of their thirty-seven-page brief and fails to direct this court to any relevant document or citation to any legal authority. In addition, Plaintiff's district-court-submission of a pro forma dated February 10, 1999, as the sole evidentiary support for damages is blatantly speculative and problematic. *See MLK, Inc. v. Univ. of Kan.*, 940 P.2d 1158, 1162 (Kan. 1997); *Source Direct*, 870 P.2d at 693. We therefore affirm the district court's grant of summary judgment to Defendants with respect to the leasing commissions and accounting claims.

-11-

We **AFFIRM** the judgment of the district court.