FILED
United States Court of Appeals
Tenth Circuit

November 2, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNDERGROUND VAULTS &
STORAGE, INC.,

      Plaintiff - Appellee/Cross-
      Appellant,

v.

CINTAS CORPORATION; CINTAS
NO. 2,

      Defendants - Appellants/Cross-
      Appellees.

Nos. 14-3215 and 14-3216
(D.C. No. 6:11-CV-01067-MLB)
(D. Kan.)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **BALDOCK**, and **HOLMES**, Circuit Judges.

Defendants-Appellants and Cross-Appellees Cintas Corporation and Cintas

No. 2 ("Cintas") appeal (No. 14-3215) from: (1) the district court's amended

judgment on a jury verdict awarding damages of $2,892,053 in favor of Plaintiff-

Appellee and Cross-Appellant Underground Vaults & Storage (UVS) and (2) the

denial of certain post-trial relief.  UVS cross-appeals (No. 14-3216) from the

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

district court's memorandum and order setting aside the jury's $8 million award of punitive damages in its favor. Underground Vaults & Storage, Inc. v. Cintas Corp., No. 11-1067-MLB, 2014 WL 4408929 (D. Kan. Sept. 8, 2014). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

In November 2009, Boeing issued a request for proposal (RFP) seeking bids for a contract to provide storage, security, retrieval, and transportation of Boeing's engineering drawings for at least seven years. Boeing wanted to house millions of its engineering drawings in a single location with the ability to retrieve and image them on demand. Boeing invited both Cintas and UVS to submit a bid for the project as well as three other vendors.

On a tour of the Boeing facilities the following month, a Cintas representative approached a UVS representative and asked if UVS would "partner" with Cintas on the bid. 8 Aplt. App. 1491–92. At the time, Cintas did not have a climate-controlled storage space, which Boeing required. UVS did not have the necessary experience in document imaging. Both companies considered another bidder, which already did substantial work with Boeing, to be the frontrunner.

On December 14, 2009, three days after the tour, Don Byers, the Cintas representative, called and emailed Pam Blaylock, his counterpart at UVS,

- 2 -

proposing again that the two companies "team together." 10 Aplt. App. 1825. He suggested that UVS transport and store the documents, while Cintas would image the documents at UVS's facility. Id. When Blaylock asked if Boeing would approve of two vendors partnering and submitting a single response, Byers replied that Boeing was "thrilled about these two companies joining forces to deliver a combined solution," see id. at 1833, but asked that only one company be the "prime"—or as a Boeing representative later testified, the "primary contractor." 7 Aplt. App. 1109.

After weeks of almost daily communications, the companies agreed upon a joint response to Boeing's RFP. As proposed, both companies would collect and transport the drawings, UVS would store them, and Cintas would image and retrieve them. The companies would bear their own expenses and did not discuss pooling and sharing profits. 5 Aplt. App. 670. Cintas would be the primary contractor for Boeing. UVS's Blaylock testified at trial that Byers assured UVS, "it won't really matter who's prime; we're going to work on this together." 4 Aplt. App. 553. UVS then told Boeing it would not submit an individual response to the RFP.

On January 4, 2010, Cintas and UVS submitted their joint bid to Boeing.[1]

---

[1] The response began:

> Cintas Corporation will prime this opportunity.
> Cintas Document Management and Underground Vaults & Storage are pleased to deliver this comprehensive solution. . . . Boeing stated

The response promoted both companies' experience, security procedures, and

ability to develop a cost-effective program together.  10 Aplt. App. 1848.

A week after submitting the response, representatives from Cintas and UVS

presented the bid to Boeing.  The presentation focused on Cintas's "approach to

document management," but it also utilized both companies' logos and included a

slide titled, "Why Cintas and Underground Vaults & Storage."  Id. at 1978.  In the

---

several times at the site visits "You are the experts; give us your ideas and your recommended approach to our problem." This is exactly what Cintas and UV&S have provided. We are delivering a "Best of Breed" solution to Boeing.

Underground Vaults & Storage to provide;
    1. Transition of Boeing's facilities to their facility in Hutchinson, KS
    2. Audit of the Vaults (Audit number 1)
    3. Long Term Secure and Environmentally Controlled Storage

Cintas Document Management to provide;
    1. Audit of the Vaults (Audit number 2)
    2. On-Site Facility Management at Underground Vaults & Storage for Boeing
    3. Request and Delivery Management and Services
    4. Technology and Integration Services
    5. Risk Management
    6. Project Management
. . .
There are significant opportunities for Cintas and UV&S to support the Boeing team in developing a successful Engineering Drawing Management Service.  Based on your objectives and criteria, we have outlined key strategic focus areas that will enable Cintas and UV&S to develop, implement, and manage the most sensible solution to satisfy your requirements in a cost-effective manner.

10 Aplt. App. 1847.

final slide, the companies assured Boeing that "[t]he best two providers have partnered to give Boeing best in class in our specific specialties." Id. at 2001.

In early July 2010, Boeing notified Cintas that Cintas and UVS had been selected as the successful bidder. In the weeks that followed, Cintas and Boeing negotiated and signed a final contract (UVS attended the meetings but did not negotiate or sign), formed a management committee (UVS was invited to join but did not), and toured UVS facilities.

On July 29, 2010, Cintas proposed UVS and Cintas sign an agreement, designating UVS as an independent contractor. UVS refused and instead proposed Cintas sign a storage lease agreement. Notably, section 1.3 of Appendix A to the lease stated: "Nothing in this Agreement shall be construed to create a partnership or employer/employee relationship between Lessor and Depositor or any other relationship between the parties other than as landlord and tenant." 12 Aplt. App. 2351. The agreement also claimed to "embod[y] the entire understanding between Depositor and Lessor . . . and there are no related prior representations or agreements." Id. at 2358. Later that month, the companies discussed the terms and exchanged revisions. On October 2010, UVS's attorney twice emailed Cintas, confirming that UVS had approved the revisions and was ready to proceed. 14 Aplt. App. 2682–2731. The attorney for Cintas replied that Cintas was "tying up a few loose ends," needed nothing else from UVS, and was also anxious to get this finalized. 13 Aplt. App. 2546–47.

Meanwhile, Cintas was aware that both storing and imaging Boeing records would be twice as lucrative than simply imaging the records. 8 Aplt App. 1359–61. In July, a Cintas executive told the company's CEO that Cintas "will be proactively trying to steer [Boeing] storage to one of our storage facilities in lieu of underground storage [with UVS] . . . . we will still push that as a value-added option." 13 Aplt. App. 2564. Without notifying UVS, Cintas presented findings to Boeing that storage with Cintas could save Boeing $1.4 million over the contract. Remaining with UVS, Cintas added, would cost more, risk damage by earthquake, fire, or flood, and pose insurance problems. 12 Aplt. App. 2301–06; 13 Aplt. App. 2576–80. Boeing agreed to the switch.

Since July, UVS had been preparing for the arrival of the Boeing documents and repeatedly attempted to contact Cintas but received no response. On November 30, 2010, Cintas told UVS that UVS would no longer provide the storage for the Boeing contract.

Not surprisingly, a lawsuit followed. On February 9, 2011, UVS filed this action against Cintas in a Kansas state court, alleging that UVS and Cintas formed a joint venture to obtain and perform the Boeing contract and that Cintas improperly denied UVS the opportunity to provide the storage component. UVS sought a declaration of the existence of the joint venture and asserted claims under Kansas law for breach of the joint venture agreement, breach of fiduciary duty, tortious interference, and unjust enrichment. Cintas removed the action to

federal court and moved for summary judgment on all UVS's claims. The district court granted Cintas's motion in part, dismissing UVS's claims for tortious interference and unjust enrichment claims, and denied it on other counts. Underground Vaults & Storage, Inc. v. Cintas Corp., No. 11-1067-JWL, 2013 WL 3815867, at *1 (D. Kan. July 22, 2013).

In the spring of 2014, the case was tried before a jury. The jury returned a verdict in favor of UVS, finding that (1) UVS and Cintas formed a joint venture, (2) Cintas breached that joint venture, (3) Cintas breached its fiduciary duty to UVS, and (4) Cintas acted in a willful or malicious manner. 1 Aplt. App. 130–31. As noted, the jury awarded UVS $2,892,053 in compensatory damages and $8 million in punitive damages. Id. at 131.

Cintas filed a motion for judgment as a matter of law arguing that UVS failed to present legally sufficient evidence to support all four of the jury's findings. Cintas also moved in the alternative for a new trial on the basis that the jury's verdict was against the overwhelming weight of the evidence. Finally, Cintas asked the court to alter or amend the judgment of punitive damages pursuant to Rule 59(e). The district court granted Cintas's motion for judgment as a matter of law on UVS's punitive damages award and denied the remaining claims. Underground Vaults & Storage, Inc., 2014 WL 4408929, at *7. The district denied Cintas's motion for a new trial. Id.

Discussion

Cintas appeals the district court's post-judgment ruling upholding the jury verdict on two grounds: first, UVS failed to present sufficient evidence of a joint venture agreement under Kansas law, and second, the court erred in instructing the jury on the burden proof. As noted, UVS cross-appeals challenging the district court's order setting aside the award of punitive damages. Each issue will be discussed in turn.

## A. Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence de novo. Miller v. Eby Realty Grp. LLC, 396 F.3d 1105, 1110 (10th Cir. 2005). We consider the entire record and draw inferences in favor of the nonmoving party, but we do not "weigh the evidence, pass on the credibility of witnesses, or substitute our conclusions for that of the jury." Id. at 1110–111. Judgment as a matter of law is warranted only when the evidence "points but one way." Harsco Corp. v. Renner, 475 F.3d 1179, 1185 (10th Cir. 2007). Put differently, a grant of judgment as a matter of law is required only where there is no legally sufficient evidentiary basis for a claim or defense under the controlling law. Id. at 1186.

Kansas law defines a joint venture as "an association of two or more persons or corporations to carry out a single business enterprise for profit." Modern Air Conditioning, Inc. v. Cinderella Homes, Inc., 596 P.2d 816, 821 (Kan. 1979). Although it can only exist by agreement of the parties, this

agreement may be found in their mutual acts and conduct.  Id. at 822.  Rather than

defining the requirements of a joint venture, Kansas courts have suggested five

factors that are indicative of such an agreement:

> (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.

Id. at 823.  No single factor is controlling.  Id.

Cintas argues that under Kansas law, an agreement to share profits is an

essential element of a joint venture.  Cintas claims that profit sharing is required

in Modern Air Conditioning's very definition of a joint venture—a definition that

Kansas precedent has repeatedly endorsed.  Because neither party suggests they

had a profit-sharing agreement in place, Cintas maintains this is conclusive

evidence that a joint venture was never formed.  Cintas's argument, however,

misreads Modern Air Conditioning and its progeny.  Modern Air Conditioning

does not require *shared* profit or *apportioned* profit but simply *anticipated profit*

for the business enterprise.  While there was no agreement to share profits in this

case, neither party disputes that securing the Boeing contract would likely result

in profit for the business enterprise Cintas and UVS formed to win the bid.  In

explaining its standard, the Kansas Supreme Court noted that it had "approved the

joint venture finding [in Modern Air Conditioning] even though . . . no profits or

losses were shared." George v. Capital S. Mortg. Inv., Inc., 961 P.2d 32, 45 (Kan. 1998). The factors "are not exclusive or outcome-determinative." Meyer v. Christie, 634 F.3d 1152, 1158 (10th Cir. 2011).

Cintas's only refuge lies in Nature's Share, Inc. v. Kutter Products, Inc., which states an agreement to share profits is "essential" to a joint venture. 752 F. Supp. 371, 383 (D. Kan. 1990). This case, however, did not rely on Modern Air Conditioning, but on a case decided four decades before Modern Air Conditioning. See id. (citing Yeager v. Graham, 94 P.2d 317 (Kan. 1939)). The district court in Nature's Share distilled the Modern Air Conditioning factors into a three-part test, stating "a joint venture depends upon three elements: joint ownership, joint operation, and express or implied agreement to share in the profits and losses." Id. We are not persuaded that the district court's interpretation represents a now accurate view of Kansas law, so the Modern Air Conditioning factors and their non-exclusive application control.

Regardless of our decision on this issue, Cintas argues there was insufficient evidence to support the jury's finding of a joint venture when considering the factors. We disagree. Although Cintas replays the evidence on each element, it fails to show there was no legally sufficient basis for the jury's finding. As the district court noted, UVS sufficiently demonstrated three of the five factors singled out in Modern Air Conditioning—joint ownership and control, community of control and active participation in management, and intention of

- 10 -

the parties.  Underground Vaults & Storage, Inc., 2014 WL 4408929, at *4.  The jury heard no evidence on profit sharing or fixing of salaries by joint agreement. Id.  For substantially the same reasons as the district court, we hold that the evidence was sufficient.

## B.  Burden of Proof

Cintas also moves for a new trial arguing the district court erred in instructing the jury on the burden of proof.  Our review of the legal content of the jury instructions is de novo, but whether to give a particular form of jury instruction is reviewed for an abuse of discretion.  Lederman v. Frontier Fire Prot., Inc., 685 F.3d 1151, 1154 (10th Cir. 2012).  We ask whether the jury was misled and whether the jury understood the issues and its duties to resolve them. Id. at 1154–55.

Cintas maintains the district court should have instructed the jury that UVS had to prove the formation of a joint venture by clear and convincing evidence, rather than by a preponderance of the evidence.  Cintas relies on two cases—one from the Kansas Supreme Court and one from our court—for the premise that oral agreements establishing fiduciary duties must be proven by clear and convincing evidence.  See Paul v. North, 380 P.2d 421 (Kan. 1963); see also Rajala v. Allied Corp., 919 F.2d 610 (10th Cir. 1990).  Because joint ventures give rise to fiduciary duties and the agreement in this case was an oral agreement, Cintas argues that these cases dictate the incorrect burden of proof was applied.

- 11 -

Cintas's argument overlooks a simple but important distinction.  In <u>Paul v. North</u>, one party insisted that a *proposal* to be joint venturers created fiduciary duties.  <u>See</u> 380 P.2d at 425–26 (noting that the claim the parties had *agreed* to a joint venture was abandoned on appeal).  In <u>Rajala v. Allied Corp.</u>, the district court concluded the relationship at issue was not a joint venture but a fiduciary relationship "toward persons who are invited to cooperate."  919 F.2d at 621–22.  This court cannot disregard the difference between a *proposal* to be joint venturers and an *agreement* to be joint venturers.  The distinction is logical, requiring heightened proof to impose fiduciary duties when parties are simply exploring an agreement to undertake a joint venture.  Here, the jury had sufficient basis to find that Cintas and UVS did more than explore such a relationship—they willingly entered into one.

Furthermore, the Kansas Supreme Court has extensively examined joint ventures and has never applied a heightened standard of proof.  The Kansas court has, however, expressly approved the use of such a heightened standard for punitive damages questions within the same case.  <u>See</u> <u>George</u>, 961 P.2d at 42; <u>Modern Air Conditioning</u>, 596 P.2d at 824–25.  The Kansas court is surely familiar with different standards of proof.

Recent Tenth Circuit cases do not require that a joint venture be shown by clear and convincing evidence so we are doubtful that <u>Rajala</u> can be read as broadly as Cintas suggests.  <u>See</u> <u>Meyer</u>, 634 F.3d at 1159; <u>Terra Venture, Inc. v.</u>

JDN Real Estate Overland Park, L.P., 443 F.3d 1240, 1246 (10th Cir. 2006).

Cintas attempts to distinguish these cases by claiming this court never specified that the burden of proof was by a preponderance. This argument is unpersuasive particularly given the predominance of the preponderance standard and the variant nature of a heightened standard. Silence should not suffice for a call to apply a heightened burden of proof.

### C. Punitive Damage Award

UVS appeals the district court's order setting aside the punitive damage award. We review de novo. McInnis v. Fairfield Cmtys. Inc., 458 F.3d 1129, 1136 (10th Cir. 2006).

The district court held that Kansas law precludes an award of punitive damages for contract-based claims unless the plaintiff has alleged an independent tort which caused additional injury ("independent tort/additional injury" rule). Underground Vaults & Storage, Inc., 2014 WL 4408929, at *5. Because UVS failed to satisfy the independent tort/additional injury rule, the district court found UVS did not qualify for punitive damages. Id. at *6. UVS now claims the independent tort/additional injury rule does not apply when the conduct at issue is also a breach of fiduciary duty. We disagree.

Kansas courts have long limited damages in breach of contract actions to a party's pecuniary losses. See Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir. 1988). Kansas law does not permit punitive or exemplary

damages unless an independent wrong—something separate from the breach of contract—causing additional harm justifies the assessment of greater damages as a deterrent.  Id.

In its post-judgment order, the district court held that while the jury found an independent tort (breach of the duty of good faith), UVS did not demonstrate—and thus the jury could not find—additional damages arising from this breach.  Underground Vaults & Storage, Inc., 2014 WL 4408929, at *5–6.  On appeal, UVS does not dispute that it failed to satisfy the independent tort/additional injury rule.  UVS argues instead that Kansas courts do not apply the independent tort/additional injury rule when conduct that breaches a contract also breaches a fiduciary duty.  A breach of fiduciary duty, UVS claims, is an exception to this rule because Kansas law dictates that contracting fiduciaries should be held to a higher standard—a standard punishable by punitive damages—requiring no proof of additional damages.[2]  Despite UVS's claims to the contrary, no Kansas precedent provides for (let alone suggests) such an exception to the rule.

Goben v. Barry is instructive.  See 676 P.2d 90 (Kan. 1984).  Although the

---

[2] Cintas claims this argument should not be considered because it was not raised before the district court.  In its reply brief, UVS cites to three instances in its filings with the district court where it mentions this argument.  These references surpass the standard for specificity this court requires.  See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993).  Therefore, we will address the argument on the merits.

defendant in <u>Goben</u> attempted to deny that he and his partner had formed a joint venture to sell oil and gas interests, his partner successfully proved a joint venture and won punitive damages. <u>See id.</u> at 97–99 (noting punitive damages may be awarded in the trial court's discretion whenever there is proof of fraud). UVS says <u>Goben</u>, also styled as a breach of contract action, permitted damages for fraud without any additional injury beyond the underlying breach of the joint venture. There are two problems with this interpretation. First, UVS argues in this appeal that breach of fiduciary duty is the exception to the bar against punitive damages—not fraud. Although breach of fiduciary duty and fraud may share characteristics in these cases, they are two different torts. Second, the fraud in <u>Goben</u> caused additional damage to the plaintiff. The <u>Goben</u> court found the plaintiff's actual damages comprised half the profits of the company until his ouster. <u>See id.</u> at 95, 99. The defendant's fraudulent conduct in the joint venture inflicted additional harm. The defendant paid himself a greater salary than the joint venturers had discussed, and he concealed withdrawals from company bank accounts. <u>Id.</u> at 98.

We have reviewed other cases suggested by UVS and do not find them supportive of the rule UVS advocates. Some were not styled as an action for breach of contract *and* breach of fiduciary duty. <u>See</u> <u>Henderson v. Hassur</u>, 594 P.2d 650 (Kan. 1979) (no claim for breach of contract); <u>Ford v. Guar. Abstract & Title Co.</u>, 553 P.2d 254 (Kan. 1976) (same). Others had different underlying

conduct and resulting damages to satisfy both the contract and tort claims alleged. See Burcham v. Unison Bancorp, Inc., 77 P.3d 130 (Kan. 2003); Equitable Life Leasing Corp. v. Abbick, 757 P.2d 304 (Kan. 1988); State ex rel. Stephan v. GAF Corp., 747 P.2d 1326 (Kan. 1987).

To win punitive damages in a contract case, Kansas litigants must show that the alleged independent tortious conduct inflicted damage beyond what was caused by the breach of contract. Breach of a fiduciary duty is no exception to this rule. UVS chose to style its case as a breach of contract action proving by a preponderance of the evidence that a joint venture was formed and it was breached. UVS's action might have sounded in tort as a breach of fiduciary duty, but a higher standard of proof would have applied. Without showing additional harm, UVS cannot collect punitive damages on a tort claim arising from a contract claim. The district court got it right.

AFFIRMED. Cintas's motion to seal volume 15 of the appellant's appendix is GRANTED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge
